ERNST & ERNST *v.* UNDERWRITERS NATIONAL ASSURANCE
COMPANY, ET AL., AND CHARLES M. BEARDSLEY,
BOOKE AND COMPANY, ET AL.

[No. 2-977A365. Filed October 23, 1978. Rehearing denied December 7, 1978.
Transfer denied April 4, 1979.]

*James A. McDermott, James A. Strain, Michael R. Fruehwald, Barnes, Hickam, Pantzer & Boyd*, of Indianapolis, *Christian, Waltz, White, Klotz & Free*, of Noblesville, for appellant.

*William C. Barnard, James K. Sommer, Eric R. Johnson, Sommer, Barnard, Freiberger & Scopelitis*, of Indianapolis, for appellee Underwriters National Assurance Co., et al. *Samuel A. Haubold, Lawrence P. Bemis, Russell J. Rotter; Kirkland & Ellis*, of Chicago; *Smith, Pearce, Barr & Howard*, of Noblesville, *Womble, Carlyle, Sandridge & Rice*, of Winston-Salem, North Carolina for appellees Charles M. Beardsley, Booke and Co., et al.

YOUNG, J. — The issue presented for review is whether the order of the trial court granting discovery of documents in the possession of an accountant was proper in view of the provisions of IC 1971, 25-2-1-23 (Burns Code Ed.) (Section 23).

Ernst & Ernst (E & E), appellant-defendant, is a partnership engaged in the practice of certified public accounting. E & E was engaged to audit

financial statements of Underwriters National Assurance Company (UNAC) for the year ended December 31, 1969. As a consequence of this audit, E & E expressed an opinion in the conventional form of an auditor's report. The auditor's report was addressed to UNAC's Board of Directors. The auditor's report and the accompanying financial statements were subsequently printed and distributed by UNAC to its shareholders and were included in its annual report to the applicable federal regulatory agency.

On December 21, 1970, all of UNAC's outstanding shares were exchanged for shares of UNAC International Corporation (International) and UNAC thereupon became a wholly-owned subsidiary of International. UNAC's shareholders became the shareholders of International and International became the corporate parent of UNAC.

E & E was subsequently engaged to audit International's consolidated financial statements for the years ending December 31, 1970, 1971, 1972 and 1973. The same audit services were performed for International as for UNAC. As a consequence of the audits of International's consolidated financial statements for the years ending December 31, 1970 and 1971, E & E also expressed separate opinions with respect to the financial statements of UNAC for the same years. These opinions were contained in separate auditor's reports which were addressed to International, UNAC's sole shareholder.

E & E's professional services in connection with these audit engagements are contested in this litigation. UNAC has alleged that "E & E's audits were not proper, workmanlike, thorough or skillfull" and that E & E is in breach of contract and guilty of negligence in connection with its audits of UNAC and International.

The documents sought by UNAC and Charles M. Beardsley and Booke and Company (Beardsley and Booke), appellees and co-defendants, relate primarily to these audit engagements. As more specifically described in the requests for production, UNAC seeks production of:

Any and all documents produced, prepared, received, obtained, utilized or relied upon by E & E in the course of preparing:

a.  The 1969 Financial Statement
b.  The 1970 Financial Statement

   c.   The 1971 Financial Statement
   d.   The 1972 Financial Statement
   e.   The 1973 Financial Statement

and Beardsley and Booke seek production of:

All documents relating to audits of UNAC and the preparation [of] audited financial statements or other financial information for the following years:

| | | | |
|---|---|---|---|
| a. | 1969 | d. | 1972 |
| b. | 1970 | e. | 1973 |
| c. | 1971 | f. | 1974 |

UNAC and Beardsley and Booke have also requested documents evidencing any communications relating to UNAC which E & E had with various third parties. The documents, which E & E has not produced and to the production of which E & E has objected on the basis of Section 23, consist principally of its work papers relating to its audits of the financial statements of UNAC and International.

Rather than being contained as an amendment to IC 1971, 34-1-14-5 (Burns Code Ed.) (Acts of 1881 [Spec. Sess.], ch. 38, § 275, p. 240, our witness incompetency statute,[1] Section 23 is one of twenty-six (26) sections of the "Public Accountancy Act of 1969," a legislative scheme designed to "regulate the practicing accountancy." The Act provides a broad range of control of accountants of every description; creates

---

1.   IC 1971, 34-1-14-5 (Burns Code Ed.) [Acts 1881 (Spec. Sess.), ch. 38, § 275, p. 240.]

The following persons shall not be competent witnesses:

First. Persons insane at the time they are offered as witnesses, whether they have been so adjudged or not.

Second. Children under ten [10] years of age, unless it appears that they understand the nature and obligation of an oath.

Third. Attorneys, as to confidential communications made to them in the course of their professional business, and as to advice given in such cases.

Fourth. Physicians, as to matter communicated to them, as such, by patients, in the course of their professional business, or advice given in such cases.

Fifth. Clergymen, as to confessions or admissions made to them in course of discipline enjoined by their respective churches.

Sixth. Husband and wife, as to communications made to each other.

an "Indiana State Board of Accountancy" with enunciated powers and duties including the power to confer the approbation of state approved licensure upon various degrees of bookkeepers such as the appellant-defendant E & E.

Preferred professional standards are described with attendant limitations. The Act is particularly concerned with the certification of the various occupations within the accounting family. It is a statutory design to regulate those who deal in books and figures, profit and loss statements, balance sheets, audits and the entire prolithera of numbers.

Deep within the recesses of this comprehensive legislation lies the section which concerns us now. IC 1971, 25-2-1-23 (Burns Code Ed.) states:

> A certified public accountant or a public accountant or an accounting practitioner, or any employee, shall not be required to disclose or divulge information of which he may have become possessed, relative to and in connection with any professional service as a certified public accountant or a public accountant or accounting practitioner. The information derived from or as the result of such professional services shall be deemed confidential and privileged: Provided, That nothing herein shall be construed as prohibiting a certified public accountant or a public accountant from disclosing any data required to be disclosed by the standards of the profession in rendering an opinion on the presentation of financial statements, or in making disclosure where said financial statements, or *the professional services of the accountant pertaining thereto are contested.* (Emphasis added.)

The trial court held that Section 23 creates a privilege personal to the client and the privilege has been waived by the client. Moreover, the court held that the statutory proviso applies to the privilege and therefore, irrespective of who holds the privilege, E & E cannot invoke the privilege because its professional services are contested. We agree and affirm the order of discovery.

E & E argues that Section 23 should not be read in its entirety, but rather as containing two separate and distinct rules: one dealing with compelled disclosure of information, and the other dealing with voluntary disclosure of information. E & E's interpretation, in fact, consists of reading the first sentence of Section 23 without reference to the remaining portion of the section. As properly construed by the trial court,

however, all portions of Section 23 must be treated as an integrated whole. The trial court's construction of Section 23 is consistent not only with the underlying purpose of the accountant-client privilege and other analogous testimonial privileges, but is also compelled by the application of settled rules of statutory construction.

In *Walgreen Co. v. Gross Income Tax Division* (1947), 225 Ind. 418, 75 N.E.2d 784, 785, the Supreme Court of Indiana stated that "in arriving at the meaning of a statute it must be considered as an entirety, each part being considered with reference to all other parts." This principle was recognized and applied by the lower court in its construction of Section 23. Section 23 cannot be divided into separate watertight compartments.

Section 23 contains two sentences. The first sentence basically states that a "certified public accountant . . . . shall not be required to disclose or divulge information of which he may have become possessed, relative to and in connection with any professional service as a certified public accountant . . . ." The second sentence then amplifies and expands upon the first sentence in two ways. First, it provides that the information which is the subject of the section shall be regarded as both "confidential and privileged." In this statement the General Assembly has recognized a most basic rule:  granting a privilege to the source of information requires that a correlative duty of confidentiality be placed on the recipient. Second, it qualifies and limits the scope and application of the prohibition against compelled disclosure. The prohibition does not apply where, as here, the accountant's professional services are contested.

E & E argues that the meaning of the first sentence must be insulated and distinguished from the meaning of the second sentence. E & E thereby assumes that the first sentence must be read without reference to the second. This assumption, however, is directly contrary to the rule of statutory construction stated in *Walgreen.*

In making its argument, E & E urges that it is simply giving the words in Section 23 their plain and ordinary meaning. But *Walgreen* states an equally important rule of statutory construction. These two rules are by no means inconsistent and both must be considered in construing a statute. *See Department of Treasury v. Reinking* (1941), 109 Ind.App.

63, 32 N.E.2d 741. It is urged that the proviso does not qualify the plain meaning of the first sentence. We reject this argument for two reasons. First, the general office of a proviso is to qualify or limit the plain meaning of another portion of a statute. *See State v. Shrode* (1949), 119 Ind.App. 57, 83 N.E.2d 900, 902. Second, the case cited by E & E to support its assertion, *State v. Shanks* (1912), 178 Ind. 330, 99 N.E. 481, instead supports the statutory construction process which was adopted by the lower court. The Supreme Court of Indiana clearly stated in *State v. Shanks* that, in the first instance, an effort must be made "to harmonize all the provisions of the statute by construing *all parts together* . . . ." 99 N.E. at 482 (emphasis added).

Thus, Section 23 contains several interrelated principles concerning the privileged and confidential status of certain accounting information, with the proviso in the second sentence qualifying and limiting the meaning of the first sentence. Section 23 cannot be properly construed as containing two separate and distinct rules.

Read in its entirety, Section 23 provides that certain accounting information is privileged and confidential. As the trial court correctly held, the accountant-client privilege created by Section 23 belongs to the client. This is the clear import of the language of Section 23.

By using the phrase "nothing herein shall be construed as prohibiting a certified public accountant . . . from disclosing" in the proviso portion of Section 23, the General Assembly has clearly indicated that it intended a privilege personal to the client. If the General Assembly had intended a privilege personal to the accountant, it would have used words other than "prohibiting . . . from disclosing" since the person to whom a privilege belongs always has the right to voluntarily disclose privileged information.

Whether, as argued by E & E, the proviso contained in Section 23 applies only to the accountant's duty of confidentiality, the use by the General Assembly of the word "herein," rather than a more restrictive phrase, indicates that the proviso applies both to the accountant's duty of confidentiality and to the client's privilege.

Thus, the words used by the General Assembly indicate that the accountant-client privilege created by Section 23 belongs to the client, not the accountant. In granting a privilege to the client, the General

Assembly has placed the correlative duty of confidentiality on the accountant. These conclusions are supported not only by the existing case law concerning testimonial privileges in both Indiana and other jurisdictions, but also by the rules of professional conduct of the Indiana accounting profession.

A fundamental principle of our system of adversary justice is that the public has a right to every person's evidence.[2] Every person has a general duty to give what testimony he is capable of giving and any exemptions from that obligation are distinct exceptions to the positive general rule. 8 J. WIGMORE, EVIDENCE § 2192, at 70 (McNaughton Rev. 1961); see Collins v. Bair (1971), 256 Ind. 230, 268 N.E.2d 95, 98.

This general principle, however, is subject to two broad exemptions: rules of exclusion and rules of privilege. A rule of exclusion, such as incompetency, facilitates the ascertainment of truth by excluding all evidence that is unreliable or is "calculated to prejudice or mislead." C. McCORMICK, EVIDENCE § 74, at 152 (2d ed. 1972); Note, Testimonial Privilege and Competency in Indiana, 27 IND. L.J. 256, 257 (1952).

Unlike rules of exclusion, rules of privilege, such as the accountant-client privilege, do not aid in the ascertainment of truth; instead, they frustrate the fact finding process by shutting out material and relevant information. Their sole justification is the "protection of interests and relationships which, rightly or wrongly, are regarded as of sufficient social importance to justify some incidental sacrifice of sources of facts needed in the administration of justice." C. McCORMICK, supra; see Collins v. Bair, supra; see generally 8 J. WIGMORE, supra, § 2285.

The common law recognizes no privilege for confidential communications between accountants and their clients. Falsone v. United States (5th Cir. 1953), 205 F.2d 734, 739, cert. denied (1953), 346 U.S. 864. No privilege exists under federal law, and no state created privilege has been recognized in the federal courts. Couch v. United States (1972), 409 U.S. 322, 335. Indiana, however, is one of 17

---

2. IC 1971, 34-1-14-1 (Burns Code Ed.) [Acts 1881 (Spec. Sess.), ch. 38, § 265, p. 240].

states that have enacted statutes creating a privilege for confidential communications between accountants and their clients. Note, *Privileged Communications: The Federal Rules of Evidence and Indiana Law; Who's Got a Secret?*, 9 IND. L. REV. 645, 667 (1976). Evidentiary privileges are generally looked upon with disfavor by the courts and commentators. Moreover, certain specific privileges such as the accountant-client privilege, which were unknown at common law, are particularly disfavored, and are therefore strictly construed in order to limit their application. *United States v. Bowman* (3rd Cir. 1966), 358 F.2d 421, 423; *United States v. Jaskiewicz* (E.D. Pa. 1968), 278 F.Supp. 525, 530; and *Rubin v. Katz* (E.D. Pa. 1972), 347 F.Supp. 322, 324. *See also*, Note, *Privileged Communications—Accountants and Accounting*, 66 MICH. L. REV. 1264, 1266 and 1268 (1968); Note, *The Accountant-Client Privilege Under the New Federal Rules of Evidence—New Stature and New Problems*, 28 OKLA. L. REV. 637, 641 (1975); and Note, *Privileged Communications*, 9 IND. L. REV. 645, 668 (1975), *supra.*

It is generally recognized that Wigmore's four basic conditions of social policy must be satisfied before the burdens imposed on the judicial process by a privilege can be justified:

(1)   The communications must originate in a confidence that they will not be disclosed.

(2)   This element of confidentiality must be essential to the full and satisfactory maintenance of the relation between the parties.

(3)   The relation must be one which in the opinion of the community ought to be sedulously fostered.

(4)   The injury that would inure to the relation by the disclosure of the communications must be greater than the benefit thereby gained for the correct disposal of litigation.

8 J. WIGMORE, EVIDENCE, §2285 (McNaughton rev. ed. 1961) (emphasis omitted).

An examination of the privilege urged by E & E demonstrates that it does not satisfy any of Wigmore's four basic conditions. The construction of Section 23 urged by E & E has nothing whatever to do with the confidentiality of communications or the fostering of any relationship. There is no showing to support a privilege belonging to the accountant.

The privilege urged by E & E would tend to insulate accountants from

their responsibility to their clients. Such a privilege could only foster incompetence and irresponsibility on the part of the accounting profession. The General Assembly obviously did not intend such a result.

These rules of statutory construction have been followed by numerous Indiana decisions interpreting privileges created by statutes, and by other states that have enacted similar accountant-client privilege statutes. *See, e.g., Collins v. Bair, supra*, at 97; *Stayner v. Nye* (1949), 227 Ind. 231, 85 N.E.2d 496, 499; see *Pattie Lea, Inc. v. District Court* (1967), 161 Colo. 493, 423 P.2d 27.

Thus privileges do not exist in a vacuum. They are enacted to foster some relationship or protect some interest that is believed to be of sufficient social importance to justify the sacrifice of relevant evidence to the fact finding process. In analyzing the nature and scope of any statutorily created privilege, the first step is to determine the specific interest or relationship that the privilege seeks to foster. Only by doing this can a specific claim of privilege be evaluated against the principle that the public is entitled to every person's evidence.

The purpose of the accountant-client privilege was well stated by the Supreme Court of Georgia in *Gearhart v. Etheridge* (1974), 232 Ga. 638, 208 S.E.2d 460, 461:

> The purpose of the accountant-client privilege is to insure an atmosphere wherein the client will transmit all relevant information to his accountant without fear of any future disclosure in subsequent litigation. Without an atmosphere of confidentiality the client might withhold facts he considers unfavorable to this situation thus rendering the accountant powerless to adequately perform the services he renders.

Stated another way, the legislature has made a judgment that the welfare of the client will be best served if matters communicated between client and accountant are subject to a zone of privacy controlled by the client.

Thus, for the accountant-client privilege created by Section 23 to be consistent with its purpose, it must be personal to the client. The fundamental purpose of the privilege provides no basis for a contention that the privilege was designed to permit accountants to unilaterally suppress evidence to the detriment of their

clients. Indeed, it is unreasonable to suggest that the General Assembly intended to give accountants special privileges over the clients they are paid to serve.

E & E expressly offers no justification for permitting it to act contrary to its clients' interests. E & E does, however, appear to imply that the privilege created by Section 23 must belong to it because Section 23 covers information received not only from the client, but also from third parties. This argument is meritless. Any third-party communications an accountant receives in the course of an audit emanates from and is directly concerned with the financial condition of the client.

The audit process has been described as follows. An audit begins with learning a client's accounting system, internal controls, accounting principles, operations, management policies and practices, business environment, and legal restraints. This information is gained through interviews with high level management, as well as the client personnel who are knowledgeable about the client's accounting systems and controls. Once an auditor understands a client, he will devise a preliminary evaluation program to determine the reliability of the client's systems, and thereby determine what the audit must check as well as what it need not check. Based on all this information gathered from the client, the auditor will draft an audit program detailing the steps to be performed during the audit examination.

Next, the auditor will normally conduct a number of functional tests to determine whether the client's internal controls are operating. For example, a functional test of the client's accounts payable system might involve determining whether only legitimate and appropriate transactions are processed. To determine this an auditor might test the client's authorization system to see if it would detect inappropriate transactions. Once these controls are verified, the auditor may revise the audit program and possibly make some constructive comments to management. Armed with all this information from the client, the auditor will then validate the balance sheet accounts, and perform any other substantive tests believed necessary. After this is completed, the financial statements are reviewed with management and ultimately an opinion is issued. *See generally*, R. MONTGOMERY, MONTGOMERY'S AUDITING (9th ed. 1975).

The foregoing review of what might be called the audit cycle reveals the depth of the sensitive business information learned about a client's operations. This information must be provided *by the client*, not third parties. Any third-party information which an accountant receives in the course of an audit is generally just a validation or confirmation of the client's accounts. Plainly, the person or entity concerned with non-disclosure is the client, and as such the accountant-client privilege must belong to the client.

The provision of IC 1971, 25-2-1-22 (Burns Code Ed.) (Section 22) requiring client consent prior to the transfer and sale of an accountant's working papers further supports and reinforces the fact that the privilege created by Section 23 belongs to the client.[3] By prohibiting the sale or transfer of working papers without the consent of the client, the General Assembly in Section 22 has indicated that the client has the predominant legal interest regarding the disclosure or non-disclosure of the accounting information contained in the accountant's working papers.

Finally, if Section 23 is given the construction argued by E & E, the result would be an all pervasive privilege personal to the accountant which could be used in derogation of his clients' best interests. This privilege would extend far beyond the scope of any other common law or statutory privilege. In the absence of a clear expression in Section 23 to this effect, it is difficult to believe that the General Assembly intended to create so dramatic a departure from prior law and to invest this class of citizens with such a unique super-privilege.

It is similarly difficult to believe that the General Assembly intended

---

3. All statements, records, schedules, working papers and memoranda made by a certified public accountant or public accountant or accounting practitioner incident to or in the course of professional service to clients by such accountant, except reports submitted by a certified public accountant or public accountant or accounting practitioner to a client, shall be and remain the property of such accountant, in the absence of an express agreement between such accountant and client to the contrary. No such statement, record, schedule, working paper or memorandum shall be sold, transferred, or bequeathed, *without the consent of the client* or his personal representative or assignee, to anyone other than one or more surviving partners or new partners of such accountant. (emphasis added.)

IC 1971, 25-2-1-22 (Burns Code Ed.)

Section 23 to be a dramatic departure from the code of ethics of the American Institute of Certified Public Accountants (AICPA).[4] Rule 301 of the AICPA's code states: A member shall not disclose any confidential information obtained in the course of a professional engagement except with the consent of the client. Any refusal by E & E to disclose client information when the client has consented to disclosure would thus be in direct violation of the clear intent of Rule 301.

In summary, therefore, the purpose for which testimonial privileges exist, the factual setting of the accountant-client relationship, and the rules of professional conduct of the Indiana accounting profession all mandate the conclusion that the accountant-client privilege created by Section 23 be construed as belonging to the client, not to the accountant.

There are several decisions from other jurisidictions interpreting accountant-client privilege statutes, which we may look to in construing Section 23. *See State ex rel. Murray v. Estate of Riggens* (1975), 164 Ind.App. 314, 328 N.E.2d 248, 252. These decisions are consistent with the holding of the trial court that the privilege created by Section 23 belongs to the client, not the accountant.

E & E has urged that the case law from other states concerning accountant-client privilege statutes is divided into two categories: cases from states whose statutes have "client consent" provisions and cases from states which do not. This characterization is erroneous. Other states have construed their accountant-client privilege statutes as creating a privilege personal to the client irrespective of whether the statute contained a client consent provision.

The most thoughtful analysis of any accountant-client statute is found in *Gearhart v. Etheridge, supra,* in which the Supreme Court of Georgia concluded that the state's statutory accountant-client privilege belonged solely to the client. The Georgia statute, analyzed by the court in *Gearhart,* GA. CODE ANN. § 84-216 (1975) now repealed and replaced with a statute GA. CODE ANN. § 84-220 (1975) more like the one we are now construing, states:

---

4. The AICPA's Code has been adopted by the Indiana Board of Public Accountancy as the rules of professional conduct of the Indiana accounting profession. IND. ADMIN. R. & REG. § (25-2-1-13)-1 (Burns Code Ed.)

> Any communications to any practicing certified public accountant transmitted to such accountant in anticipation of, or pending, the employment of such accountant shall be treated as confidential and not disclosed nor divulged by said accountant in any proceedings of any nature whatsoever. This rule shall not exclude the accountant as a witness to any facts which may transpire in connection with his employment.

It contains no client consent provision. Nevertheless, after analyzing the purpose of the statute, the court held that one joint venturer could not prohibit the accountant of the joint account from testifying as to communications between himself and the other principal because, although all communications between the joint clients and their accountant are privileged as to all outside parties, the privilege does not exist between the principals.

The Illinois accountant-client privilege statute, which contains no client consent provision, was construed in *Kunin v. Forman Realty Corp.* (1959), 21 Ill.App. 2d 221, 157 N.E.2d 785, *appeal dismissed* (1959), 17 Ill.2d 543, 162 N.E.2d 401. The Illinois statute, ILL. REV. STAT. ch. 110-½, § 51 (1975), renumbered at ILL. ANN. STAT. ch. 111, § 5533 (Smith-Hurd) reads in its entirety:

> A public accountant shall not be required by any court to divulge information or evidence which has been obtained by him in his confidential capacity as a public accountant.

In *Kunin* the director of a corporation sued the corporation to obtain copies of the corporation's audit reports for two years. The plaintiff subpoenaed the corporation's auditor to produce the audit reports and to testify about them at trial. The trial court quashed the subpoena and refused to permit the auditor to testify at trial. The appellate court reversed, holding that a director of a corporation was entitled to a copy of the corporation's audit report and that the audit report was not protected by a privilege belonging to the accountant. In doing so, the court stated:

> It is argued that under the existing Illinois statute, a report is privileged. Privileged for whom? Not the accountant. *It is privileged for his client.*

157 N.E.2d at 788. (emphasis added).

In *Savino v. Luciano* (Fla. 1957), 92 So.2d 817, the Supreme Court of

Florida concluded that the Florida accountant-client privilege was personal to the client and therefore could be waived by the client. E & E implies that this decision is irrelevant to an interpretation of Section 23 because the Florida statute contains a consent provision. The fallacy of the argument is twofold. First, the court did not rely on the consent portion of the statute. And second, the court's holding was based on the nature of the privilege itself.

As in the case of all personal privileges, the accountant-client privilege may be waived by the client. And, as in all confidential and privileged communications, "[t]he justification for the privilege lies not in the fact of communication, but in the interest of the persons concerned that the subject matter should not become public."

92 So.2d at 819 (citation omitted). *Savino* thus supports our conclusion that, when analyzed from the perspective of its nature and purpose, the privilege created by Section 23 belongs to the client.

The Supreme Court of Colorado in *Weck v. District Court* (1966), 158 Colo. 521, 408 P.2d 987, construing a statute containing a client consent provision concluded that "[t]he privilege created by the Colorado statute is not the privilege of the accountant but that of the client . . . ," 408 P.2d at 992, without specific reference to the statute's client consent provision. This conclusion is entirely consistent with the purpose of the privilege here.

Consistent with the conclusions reached by the courts in *Gearhart, Kunin, Savino* and *Weck*, commentators have uniformly concluded that the accountant-client privilege belongs to the client. Comment, *Evidence: The Accountant-Client Privilege Under the New Federal Rules of Evidence—New Stature and New Problems*, 28 OKLA. L. REV. 637, 640 (1975); Jentz, *Accountant Privileged Communications: Is It a Dying Concept Under the New Federal Rules of Evidence?*, 11 AM. BUS. L.J. 149, 152-53 (1973); Note, *Privileged Communications—Accountants and Accounting*, 66 MICH. L. REV. 1264, 1269 (1968).

In summary, the majority of jurisdictions[5] that have considered the question have concluded that the accountant-client privilege is personal

---

5. In addition to Georgia, Illinois, Florida, and Colorado, Louisiana has by implication concluded that the accountant-client privilege belongs to the client. *Mercantile Credit Corp. v. Engstrom's of Alexandria, Inc.* (La. App. 1969), 223 So.2d 428.

to the client. This conclusion is not based on artificial distinctions in the wording of particular statutes, but upon an analysis of the nature and purpose of the privilege itself.

E & E relies on one New Mexico decision construing a later repealed statute and several federal decisions which refer to the Illinois statute in support of its position that Section 23 creates a privilege in its favor.[6] In none of the cases, however, was an accountant permitted to withhold information concerning the client when the client had requested disclosure of the information.

Indiana decisions interpreting the state's attorney-client and physician-patient privilege also support the conclusion that the privilege created by Section 23 belongs to the client. Both privileges are designed to encourage full disclosure to the physician or attorney in order that the fullest measure of professional services can be provided to the client or patient. Accordingly, our courts have held that each privilege is personal to the client or patient and can be waived only by that person. *See, e.g., Collins v. Bair, supra; Key v. State* (1956), 235 Ind. 172, 132 N.E.2d 143, 145.

In *Collins v. Bair, supra,* the Supreme Court of Indiana held that the

---

6. In *United States v. Balistrieri* (7th Cir. 1968), 403 F.2d 472, *vacated on other grounds* (1969), 395 U.S. 710 the court reasoned that in a federal criminal tax prosecution federal law applied and no accountant-client privilege exists in federal law. In *F.T.C. v. St. Regis Paper Co.* (7th Cir. 1962), 304 F.2d 731 the court stated the system of rules of evidence in force for trials by judges or in courts of equity is not applicable to inquiries of fact determined by administrative tribunals or officers. Therefore the privilege was not available. Such was the case in *Dorfman v. Rombs* (N.D. Ill. 1963), 218 F.Supp. 905. In *Baylor v. Mading-Dugan Drug Co.* (N.D. Ill. 1972), 57 F.R.D. 509, the court held the Illinois statutory privilege not applicable in a federal case. The statutory privilege was held waived by failing to raise any objection during testimony in *Ash v. H. G. Reiter Co.* (1967), 78 N.M. 194, 429 P.2d 653. In all of these cases then the statutory privilege, albeit discussed, was not a controlling factor. In both *Palmer v. Fisher* (7th Cir. 1955), 228 F.2d 603, *cert. denied* (1956) 351 U.S. 965, *overruled on other grounds* (1968), 360 F.2d 868, 872 and *Radiant Burners, Inc. v. American Gas Ass'n.* (N.D. Ill. 1962), 209 F.Supp. 321, *rev'd. on other grounds* (7th Cir. 1963), 320 F.2d 314, *cert. denied* (1963), 375 U.S. 929 which relied on Palmer in discussing the accountant-client privilege, federal courts are interpreting a state statute. The state court in *Kunin, supra,* construes the statute as granting the client the privilege. In such a situation the federal court's interpretation is not controlling. *See Tennessee Enamel Mfg. Co. v. Stoves, Inc.* (6th Cir. 1951), 192 F.2d 863, *cert. denied* (1952), 342 U.S. 946 and *Chaffin v. Nicosia* (1974), 261 Ind. 698, 310 N.E.2d 867.

physician-patient privilege is waived when a patient places his mental or physical condition in issue by way of claim or defense. In so holding, the Court explained the purpose of the physician-patient privilege as follows:

> The privilege has been justified on the basis that its recognition encourages free communications and frank disclosure between patient and physician which, in turn, provide assistance in proper diagnosis and appropriate treatment. To deny the privilege, it was thought, would destroy the confidential nature of the physician-patient relationship and possibly cause one suffering a particular ailment to withhold pertinent information of an embarrassing or otherwise confidential nature for fear of being publicly exposed.

268 N.E.2d at 98. The same justification applies to the accountant-client privilege. It has been created to encourage communications between an accountant and his client, and therefore must be deemed personal to the client.

In *Key v. State, supra,* the trial court's exclusion of testimony of an attorney was reversed by the Supreme Court of Indiana on the basis of its finding of an implied waiver of the attorney-client privilege. In reaching its conclusion, the Supreme Court stated:

> It is well settled, however, that the confidential relationship of attorney and client is not absolute for all purposes, but is a privilege which belongs to the client, and the client alone, to claim or to waive; and where the client himself testifies concerning the privileged matter, he then waives the privilege.

132 N.E.2d at 145. This statement is entirely consistent with the universally recognized justification for the attorney-client privilege, "namely, that of encouraging full disclosure by the client for the furtherance of the administration of justice . . . ." C. McCORMICK, *supra,* § 89, at 182. Again, the same justification applies to the accountant-client privilege.

Analogies to the attorney-client and physician-patient privilege also support the conclusion that the privilege created by Section 23 is unavailable when the services of the accountant are contested.

It has long been established that the attorney-client privilege cannot be asserted in a suit which contests the attorney's professional services

or otherwise attacks the professional competency of an attorney. *Nave v. Baird* (1859), 12 Ind. 318; *Moore v. State* (1953), 231 Ind. 690, 111 N.E.2d 47. Under similar circumstances, the physician-patient privilege is inapplicable. *Lane v. Boicourt* (1891), 128 Ind. 420, 27 N.E. 1111; *Becknell v. Hosier* (1894), 10 Ind.App. 5, 37 N.E. 580.

While the privilege created by Section 23 is closely analogous to the two most recognized personal privileges, attorney-client and physician-patient, E & E contends that the accountant-client privilege is more closely analogous to the Indiana newsman's privilege. Upon close examination of the nature and purpose of this privilege, however, it is clear that it is not analogous to the accountant-client privilege.

The Indiana newsman's privilege is personal to the newsman. This was recognized by the Supreme Court of Indiana in *Hestand v. State* (1971), 257 Ind. 191, 273 N.E.2d 282 and *Lipps v. State* (1970), 254 Ind. 141, 258 N.E.2d 622. In *Branzburg v. Hayes* (1972), 408 U.S. 665, 695, 726, Justice Stewart, in dissent, employed reasoning applicable to our construction of the Indiana newsman's privilege saying:

> As I see it, a reporter's right to protect his source is bottomed on the constitutional guarantee of a full flow of information to the public. A newsman's personal First Amendment rights or the associational rights of the newsman and the source are subsumed under that broad societal interest protected by the First Amendment. Obviously, we are not here concerned with the parochial personal concerns of particular newsmen or informants.
>
> "The newsman-informer relationship is different from ... other relationships whose confidentiality is protected by statute, such as the attorney-client and physician-patient relationships. In the case of other statutory privileges, the right of nondisclosure is granted to the person making the communication in order that he will be encouraged by strong assurances of confidentiality to seek such relationships which contribute to his personal well-being. The judgment is made that the interests of society will be served when individuals consult physicians and lawyers; the public interest is thus advanced by creating a zone of privacy that the individual can control. However, in the case of the reporter-informer relationship, society's interest is not in the welfare of the informant per se, but rather in creating conditions in which information possessed

by news sources can reach public attention." Note, 80 Yale L.J. 317, 343 (1970).

408 U.S. at 726 n. 2.

Thus analyzed, the newsman's privilege is properly lodged in the reporter in order to protect society's interest in the free flow of information. But as Justice Stewart observed, the interests served by other personal privileges, such as the accountant-client privilege, are fundamentally different; they are designed to protect the personal interests of the patient or client by creating assurances of confidentiality.

Section 23 clearly creates a privilege personal to client. This conclusion is supported both by the fundamental purpose for which the accountant-client privilege was created and established rules of statutory construction. It is also consistent with decisions from other jurisdictions which have construed accountant-client privilege statutes.

Accordingly, we affirm the discovery order entered by the trial court on September 9, 1977.

Order affirmed.

Lybrook, P.J., Concurs (Sitting by designation).

Lowdermilk, J., Concurs (Sitting by designation).

NOTE—Reported at 381 N.E.2d 897.