# Illinois Official Reports

## Appellate Court

---

### *Brunton v. Kruger*, 2014 IL App (4th) 130421

---

| | |
|---|---|
| Appellate Court Caption | JUNE BRUNTON, Petitioner-Appellee, v. ROBERT KRUGER, as Trustee of the Helen P. Kruger Trust Dated December 7, 2005, as Trustee of the Gordon J. Kruger Trust Dated December 7, 2005, as Executor of the Helen P. Kruger Estate, as Executor of the Gordon J. Kruger Estate, and Individually; DAVID G. KRUGER; GORDON J. KRUGER, a/k/a James Kruger; MARY B. KRUGER, a/k/a Mary I. Kruger; DEBRA J. KRUGER; CLINT S. KRUGER; BRIAN D. KRUGER; and UNKNOWN DESCENDANTS OF ROBERT KRUGER AND DAVID KRUGER, Respondents-Appellees, and MATTHEW F. TIBBLE, Contemnor-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-13-0421 |
| Filed | March 27, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | An accounting firm could not claim the accountant-client privilege where petitioner, who did not benefit from her deceased parents' trust created by the accounting firm, sought access to estate-planning documents because, even though estate planning falls under the accountant-client privilege, the testamentary exception exists because here the benefit of disclosure outweighs the injury to the accountant-client relationship and the client's successors, as current holders of the privilege, had waived the privilege for the benefit of the estate. |
| Decision Under Review | Appeal from the Circuit Court of McLean County, Nos. 11-P-113, 11-P-245; the Hon. Elizabeth A. Robb, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part. |

Counsel on Appeal

Robert Marc Chemers (argued), Richard M. Waris, Matthew F. Tibble, and Philip G. Brandt, all of Pretzel & Stouffer, Chtrd., of Chicago, for appellant.

Mercer Turner (argued), of Law Office of Mercer Turner, P.C., of Bloomington, and Darrell E. Dies (argued), of Eureka, for appellees.

Panel

PRESIDING JUSTICE APPLETON delivered the judgment of the court, with opinion.
Justices Pope and Knecht concurred in the judgment and opinion.

**OPINION**

¶ 1        An attorney, Matthew F. Tibble, appeals from an order in which the trial court, at his own request, found him to be in direct civil contempt of court and fined him $100 for refusing to comply with a discovery order. Tibble did not really treat the court with contempt (as the court understood, for it found his refusal to be "non-contumacious"). Rather, the contempt finding was merely a procedural device; without it, he could not have appealed. See *Reda v. Advocate Health Care*, 199 Ill. 2d 47, 54 (2002).

¶ 2        Essentially, Tibble is taking this stand on behalf of his client, an accounting firm, Striegel, Knobloch & Company (Striegel). The discovery order requires Striegel to turn over to petitioner, June Brunton, any documents having to do with estate planning services Striegel provided for her parents, Helen P. Kruger and Gordon J. Kruger, who are now deceased. Striegel believes, however, that the accountant-client privilege in section 27 of the Illinois Public Accounting Act (225 ILCS 450/27 (West 2012)) protects those documents from disclosure in a judicial proceeding. The cases interpreting this statute are rather scarce.

¶ 3        We conclude, in our *de novo* review (see *Reda*, 199 Ill. 2d at 54), that there is a testamentary exception to section 27, as there is to the attorney-client privilege, and that the exception applies to this case, in which Brunton challenges her mother's will. We further hold that, apart from the testamentary exception, the personal representative and heirs of Helen Kruger can waive the privilege in the interest of her estate–and that they have done so. Therefore, we affirm the discovery order of April 11, 2013, but we vacate the contempt order, considering that Tibble has acted in good faith. See *Hyams v. Evanston Hospital*, 225 Ill. App. 3d 253, 259 (1992).

¶ 4                                    I. BACKGROUND

¶ 5        As we said, Striegel is an accounting firm, and Helen and Gordon Kruger were its clients. Striegel helped them with their estate planning, and to that end, they gave confidential information to Striegel: information about their family, income, assets, and estate planning

goals. On December 7, 2005, Helen and Gordon Kruger implemented the estate plan by executing two wills and two trusts: a will and a trust for each of them.

¶ 6        Helen Kruger died on July 30, 2009, and Gordon Kruger died on February 10, 2011. They were survived by a daughter, June Brunton, and three sons: Robert T. Kruger, David G. Kruger, and James J. Kruger. (It appears from the caption that James J. Kruger's real name is Gordon J. Kruger, but apparently he goes by James, and we will call him James to distinguish him from his father.)

¶ 7        On May 17, 2011, the trial court admitted Helen Kruger's will to probate. The will named the oldest son, Robert Kruger, as her personal representative. The second section of the will bequeathed all her tangible personal property to her spouse, and the third section bequeathed the residue of her estate in accordance with the terms of the trusts.

¶ 8        The trust of Helen Kruger provided that, when she and her spouse died, all of the shares of stock in their farm, K-Farms, Inc., would be distributed to Robert Kruger and that any remaining trust property would be distributed among the sons equally. In both of their trusts, Helen and Gordon Kruger said they were "mindful" of their daughter, June Brunton, but they were "making no provision for her under this Instrument for the reason that [they had] provided for her by other means."

¶ 9        On September 14, 2011, Brunton filed a petition contesting the will and trust of Helen Kruger. In her petition, she alleged that Helen Kruger had a diminished mental capacity at the time she executed the trust and that she had executed the trust under the undue influence of Robert Kruger and his spouse, Debra Kruger.

¶ 10       On November 23, 2011, Brunton issued subpoenas to Dennis Knobloch, a certified public accountant (CPA) at Striegel, requesting any documents having to do with the estate planning services Striegel had performed for Helen and Gordon Kruger. The subpoenas also sought federal tax documents: gift tax returns, estate tax returns, and income tax returns.

¶ 11       The respondents in this case, the parties defending Helen Kruger's will and trust, are her and Gordon Kruger's sons as well as several other Krugers, presumably grandchildren. On October 18, 2011, respondents issued a deposition subpoena to Knobloch, in which they requested the same documents Brunton had requested in her subpoenas.

¶ 12       On October 26, 2011, another CPA at Striegel, Danny Kiedaisch, complied with respondents' subpoena, turning over to them all the documents relating to the estate planning services. Striegel, however, did not provide those documents to Brunton. She filed a motion to compel compliance with her subpoenas of November 23, 2011. In response, Striegel invoked the accountant-client privilege in section 27 (225 ILCS 450/27 (West 2012)).

¶ 13       On December 7, 2012, the trial court ordered Striegel to produce the tax documents to Brunton. But the court held the estate planning documents to be privileged under section 27 and accordingly refused to compel the production of them. Striegel complied with the court's order, turning over to Brunton the tax documents but withholding from her the estate planning documents.

¶ 14       On February 14, 2013, Brunton issued deposition subpoenas to Kiedaisch as well as to an employee of Striegel who was not a CPA, Pamela Wissmiller. In these subpoenas, Brunton requested the production of estate planning documents the trial court previously held were privileged. The depositions were scheduled for March 19, 2013.

¶ 15       On February 27, 2013, Striegel filed an amended motion to quash the subpoenas, again invoking the privilege in section 27.

¶ 16      On March 21, 2013, respondents filed a memorandum requesting the trial court to deny Striegel's motion to quash Brunton's deposition subpoenas of February 14, 2013, and also to compel Striegel to produce to her all the documents she requested in her original subpoena of November 23, 2011.

¶ 17      In a hearing on April 11, 2013, the trial court again found the accountant-client privilege to be applicable, but this time, the court held that the doctrine of waiver overcame the privilege because Striegel already had provided respondents all the documents that Brunton sought in her deposition subpoenas of February 14, 2013, including the estate planning documents. When Striegel's attorney, Matthew Tibble, requested the court to clarify the scope and extent of the waiver, the court responded that the privilege was waived as to all the documents Striegel previously provided to respondents.

¶ 18      In addition to waiver, the trial court found a testamentary exception to the accountant-client privilege. The court explained:

> "But I also want to say that in the context of this type of a legal action that if you look at [*In re October 1985 Grand Jury No. 746*, 124 Ill. 2d 466 (1988),] which was the Supreme Court case I believe that talked about carving out exceptions to *** the accountant privilege that can be asserted, the fourth prong of that test or that condition is that the injury inured by disclosure must be greater than the benefit gained for a correct disposal of litigation.
>
> And when you go back to what this case is and we know that one of the three advisors is now deceased and a second–that being Mr. Striegel–that the second advisor, Mr. Fleming (and the Krugers attorney who prepared the Krugers Wills and Trusts) is probably not competent, and we really are trying to get to what happened, what is the truth, that is a truth-seeking forum, I think that that all the more supports the Court's ruling that the information sought in the Subpoena must be disclosed and that the privilege cannot be asserted in this type of an action when the donative and testamentary intent of the clients are involved here."

¶ 19      The trial court further found that any information Helen and Gordon Kruger had given to Wissmiller fell outside the accountant-client privilege because Wissmiller was not a CPA.

¶ 20      Therefore, on April 11, 2013, the trial court entered an order denying Striegel's motion to quash Brunton's deposition subpoenas of February 14, 2013, and the court scheduled a status hearing for May 9, 2013.

¶ 21      In the status hearing, Tibble informed the trial court that, instead of complying with the court's discovery order of April 11, 2013, Striegel wished to have the appellate court consider the question of whether section 27 (225 ILCS 450/27 (West 2012)) privileged the estate planning documents from disclosure. Merely for the purpose of creating an appealable order, he requested the court to hold him in civil contempt for his noncontumacious refusal to comply with the discovery order. Accordingly, the court found Tibble "in direct civil contempt of [the] Court for [his] non-contumacious refusal to comply with [the] Court's April 11 Order," and the court fined him $100. The court, however, stayed execution of the contempt order and also stayed execution of the discovery order of April 11, 2013, pending an appeal of those orders.

¶ 22      This appeal followed.

¶ 23                       II. ANALYSIS

¶ 24                         A. The Scope of the Privilege

¶ 25                  1. *The Types of Accountancy Activities to Which the Privilege Applies*

¶ 26      Section 27 of the Illinois Public Accounting Act provides: "A licensed or registered certified public accountant shall not be required by any court to divulge information or evidence which has been obtained by him in his confidential capacity as a licensed or registered certified public accountant. This Section shall not apply to any investigation or hearing undertaken pursuant to this Act." 225 ILCS 450/27 (West 2012).

¶ 27      In *PepsiCo, Inc. v. Baird, Kurtz & Dobson LLP*, 305 F.3d 813, 816 (8th Cir. 2002), the Eighth Circuit interpreted section 27 as privileging only information the CPA obtained when auditing a financial statement. Noting that the Supreme Court had directed courts to construe privileges narrowly (*id.*), the Eighth Circuit said:

> "We conclude that a narrow construction of § [27], read in conjunction with § [8], mandates a distinction between protected accounting services involving opinions on financial statements and unprotected nonfinancial consulting services. ***
>
> Relying primarily on the client's reasonable expectations of confidentiality would cloak far too many reports and records with the armor of privilege. Most clients reasonably expect the accountant will keep virtually all of their business and personal records secret. A narrow reading of the Illinois accountant-client privilege dictates that the confidential reports must also arise from accounting services involving opinions on financial statements." *Id.*

¶ 28      At the time the Eighth Circuit reached this conclusion that the accountant-client privilege covered only information the CPA obtained when auditing a financial statement, section 8 of the Illinois Public Accounting Act (225 ILCS 450/8 (West 2002)) provided as follows:

> "§ 8. Practicing as public accountant. Persons, either individually, as members of a partnership or limited liability company, or as officers of a corporation, who sign, affix or associate their names or any trade or assumed names used by them in a profession or business to any report expressing or disclaiming an opinion on a financial statement based on an audit or examination of that statement, or expressing assurance on a financial statement, shall be deemed to be in practice as public accountants within the meaning and intent of this Act."

¶ 29      By comparing section 27 with section 8, the Eighth Circuit appeared to reason that if a CPA received information in a context other than the audit or examination of a financial statement, the CPA would not be "in practice as [a] public accountant[ ]" (*id.*) and hence the information would not be "obtained by him in his confidential capacity as a public accountant" (225 ILCS 450/27 (West 2002)). See *PepsiCo*, 305 F.3d at 816 ("read[ing]" section 27 "in conjunction with" section 8). The trouble with this reasoning is that often, if not most of the time, certified financial statements are intended to be read by third parties, most notably investors and regulators. It would be illogical to require CPAs to maintain the confidentiality of information they obtained in their audit of a financial statement if such information was destined to be used in their publicly disseminated opinion regarding the financial statement.

¶ 30      Nevertheless, Brunton shares the Eighth Circuit's view that section 27 covers only information that CPAs obtain when auditing a financial statement, and she argues that a new section of the Illinois Public Accounting Act, section 8.05 (Pub. Act 98-254, § 10 (eff. Aug. 9, 2013) (adding 225 ILCS 450/8.05)), confirms the smallness of section 27's coverage. Tibble objects that section 8.05 did not become effective until August 9, 2013, several months after

the contempt order from which he appeals. It makes no difference. An evidentiary privilege is merely a procedural rule of evidence; it confers no substantive right. *McDonald's Corp. v. Levine*, 108 Ill. App. 3d 732, 744 (1982). This appeal is about an evidentiary privilege, nothing more. Applying section 8.05 to this case would impair no substantive right any of the parties had when they acted. See *Commonwealth Edison Co. v. Will County Collector*, 196 Ill. 2d 27, 38 (2001). Nor would section 8.05 increase any party's liability for past conduct. See *id.* Nor would it impose upon Tibble and Striegel any duty of confidentiality they do not embrace already. See *id.* In fact, as we will explain, section 8.05 favors their view of the scope of section 27 more than Brunton's view.

¶ 31    Brunton reasons that the purpose of the Illinois Public Accounting Act (225 ILCS 450/0.01 to 32 (West 2012)) is to enhance the dependability of financial statements by allowing only capable and well-trained persons to prepare, audit, or examine financial statements and issue reports on them. See 225 ILCS 450/0.02(c) (West 2012). She notes that, under section 8.05(b)(3) (Pub. Act 98-254, § 10 (eff. Aug. 9, 2013)), one need not be a CPA to provide a number of services that she describes as "private accounting" as opposed to "public accounting"–for example, estate planning, general business consulting, or the preparation of tax returns–but that, under section 8.05(b)(1), one must be a CPA to issue "any report expressing an assurance on a financial statement or disclaiming an opinion on a financial statement based on an audit or examination of that statement or to express assurance on a financial statement" (Pub. Act 98-254, § 10 (eff. Aug. 9, 2013)). Because the certification of financial statements is reserved for CPAs and because one need not be a CPA to do estate planning (Pub. Act 98-254, § 10 (eff. Aug. 9, 2013) (adding 225 ILCS 450/8.05(b)(1), (3))), Brunton concludes that any information or evidence that Striegel obtained when doing estate planning for Helen and Gordon Kruger is not "information or evidence which has been obtained by him in his confidential capacity as a licensed or registered certified public accountant" (225 ILCS 450/27 (West 2012)).

¶ 32    It is common knowledge, though, that auditing financial statements is not the only service that CPAs offer to the public–even though they alone are allowed to perform that particular service (Pub. Act 98-254, § 10 (eff. Aug. 9, 2013)). They also perform other "services involving the use of [their] professional skills or competencies." Pub. Act 98-254, § 10 (eff. Aug. 9, 2013). "Accountancy activities *** performed by a CPA[ ] includ[e] *** accounting, management, financial or consulting services, compilations, internal audit, preparation of tax returns, furnishing advice on tax matters, bookkeeping, or representations of taxpayers ***." *Id.* When performing those "[a]ccountancy activities," a CPA could obtain "information or evidence *** in his confidential capacity as a licensed or registered certified public accountant." 225 ILCS 450/27 (West 2012). Estate planning could involve "financial or consulting services" and "furnishing advice on tax matters." Pub. Act 98-254, § 10 (eff. Aug. 9, 2013).

¶ 33    In short, auditing financial statements is only one of the "[a]ccountancy activities *** performed by a CPA." Pub. Act 98-254, § 10 (eff. Aug. 9, 2013). Estate planning is another such activity. There is no reason to suppose that in section 27, the legislature was concerned with confidentiality only when a CPA performed one of the many "[a]ccountancy activities" the statute recognizes a CPA as performing, namely, auditing a financial statement. Since the legislature chose to create a privilege applicable to information or evidence obtained by a CPA, it is unclear why the legislature would care about confidentiality when the CPA audited a

financial statement but would not care about confidentiality when the CPA helped a client with estate planning.

¶ 34    Granted, "any privilege should be narrowly limited to the extent necessary to achieve its desired purpose," but limiting the scope of the privilege to information the CPA obtains while auditing financial statements would cause section 27 to fall short of its evident purpose. *Marsh v. Lake Forest Hospital*, 166 Ill. App. 3d 70, 76 (1988). The purpose of the accountant-client privilege is to free clients from the concern that what they tell their CPAs will be disclosed in future litigation, thereby enabling clients to feel at liberty to consult and communicate with CPAs fully, without inhibition, and in turn enabling CPAs to render the best possible service. *Grand Jury*, 124 Ill. 2d at 476; *Federal Insurance Co. v. Arthur Anderson & Co.*, 816 S.W.2d 328, 331 (Tenn. 1991). Estate planning is an activity in which the client would feel the need for confidentiality (see *Hitt v. Stephens*, 285 Ill. App. 3d 713, 718 (1997)), probably more so than in the audit of a financial statement, considering that audit reports often are incorporated into annual reports. We conclude, therefore, that information or evidence a CPA receives while assisting a client with estate planning is subject to the privilege in section 27 if the CPA received the information or evidence in confidence.

¶ 35                              2. *Agents of the CPA*

¶ 36    Respondents argue that, according to the plain terms of section 27, only "[*a*] *licensed or registered certified public accountant* shall not be required by any court to divulge information or evidence which has been obtained by him in his confidential capacity." (Emphasis added.) 225 ILCS 450/27 (West 2012). They argue that because Wissmiller, an employee of Striegel, was not a licensed or registered CPA, any information or evidence that Helen and Gordon Kruger gave to Wissmiller is unprivileged.

¶ 37    The legislature must have anticipated, though, that CPAs would employ support staff and that the support staff would be privy to client communications. " '[S]trict construction' " of a privilege "is not synonymous with a cramped or unreasonably narrow construction." *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 612 (2011), *aff'd*, 2012 IL 112219. It would be unreasonable to interpret section 27 as barring the disclosure of information the client gave the CPA directly but allowing the disclosure of information the client gave the CPA indirectly, through the CPA's employee. The supreme court has compared the accountant-client privilege to the attorney-client privilege (*Grand Jury*, 124 Ill. 2d at 476), and it has held that the attorney-client privilege protects communications by the client to the attorney's agents (*People v. Knippenberg*, 66 Ill. 2d 276, 283 (1977)). See also *Boettcher v. Fournie Farms, Inc.*, 243 Ill. App. 3d 940, 945 (1993). " 'The assistance of these agents being indispensable to [the attorney's] work and the communications of the client being often necessarily committed to them by the attorney or by the client himself, the privilege must include all the persons who act as the attorney's agents.' " *Knippenberg*, 66 Ill. 2d at 283-84 (quoting 8 John H. Wigmore, Evidence § 2301, at 583 (McNaughton rev. ed. 1961)). Because that rationale applies equally to CPAs, we interpret section 27 as forbidding courts to compel the disclosure of confidential communications a client makes to non-CPA employees or agents of CPAs when the client is obtaining accounting services.

¶ 38                          B. The Holder of the Privilege

¶ 39       Citing *People v. Continental Illinois National Bank & Trust Co. of Chicago*, 360 Ill. 454, 458 (1935), Brunton argues that Robert Kruger, in his capacity as the personal representative of Helen and Gordon Kruger, has waived the accountant-client privilege. Also, Brunton and respondents argue that, under the testamentary exception, the accountant-client privilege "does not apply to a communication relevant to an issue between parties who claim through the same deceased client" (internal quotation marks omitted) (*Lamb v. Lamb*, 124 Ill. App. 3d 687, 693 (1984)).

¶ 40       Tibble counters that, when invoking waiver and the testamentary exception, Brunton and respondents mistakenly assume that the clients and their successors are the holders of the accountant-client privilege whereas the holder of the privilege actually is the CPA. In support of his argument that the CPA is the holder of the accountant-client privilege, Tibble cites *United States v. Balistrieri*, 403 F.2d 472 (7th Cir. 1968), *vacated on other grounds*, 395 U.S. 710 (1969), *Western Employers Insurance Co. v. Merit Insurance Co.*, 492 F. Supp. 53, 55 (N.D. Ill. 1979), and *Dorfman v. Rombs*, 218 F. Supp. 905, 907 (N.D. Ill. 1963).

¶ 41       We disagree with those federal decisions. *Balistrieri* and *Western* rely ultimately on *Dorfman* (*Balistrieri*, 403 F.2d at 481; *Western*, 492 F. Supp. at 55), and we are unconvinced by the reasoning in *Dorfman*. In *Dorfman*, the court reasoned that because the version of section 27 in effect at that time "[did] not even mention the term [']client,['] " the legislature created not an "accountant client" privilege but "an accountant privilege, a privilege whose benefit was to inure to, and which could only be claimed by, an accountant." *Dorfman*, 218 F. Supp. at 907. Thus, according to *Dorfman*, only an accountant could claim the privilege; a client could not do so. *Id.*

¶ 42       Admittedly, section 27, even in its present form, does not mention the term "client" whereas it does mention the term "certified public accountant." 225 ILCS 450/27 (West 2012). Nevertheless, it strikes us as rather simplistic to reason that, *ergo*, the CPA rather than the client is the intended holder of the privilege. Section 27 does not exist for the benefit of CPAs; it exists for the benefit of clients, to encourage them to make full disclosures to their CPAs. *Grand Jury*, 124 Ill. 2d at 476; *First Community Bank & Trust v. Kelley, Hardesty, Smith & Co.*, 663 N.E.2d 218, 222 (Ind. Ct. App. 1996) ("The accountant's duty of confidentiality is based solely on the intrinsic value of confidentiality to the client."). The holder of a privilege is "the person whose consultation and communication are to be encouraged." Edward J. Imwinkelried, The New Wigmore: Evidentiary Privileges § 6.5.1(a)(2) (2014). "[I]n the case of the accountant-client privilege, *** the holder is the client ***." *Id.* (citing *First Community*, 663 N.E.2d at 222, and *Federal Insurance Co. v. Arthur Anderson & Co.*, 816 S.W.2d 328, 329-30 (Tenn. 1991)). *Cf. Maleski v. Corporate Life Insurance Co.*, 646 A.2d 1, 4 (Pa. Commw. Ct. 1994) ("The purpose of the attorney-client privilege is to benefit the client, and accordingly, the client is the holder of the privilege.").

¶ 43       Both Indiana and Tennessee enacted accountant-client confidentiality statutes similar to section 27, and like section 27, their statutes did not explicitly mention the "client." See *Federal Insurance*, 816 S.W.2d at 329-30 (quoting Tenn. Code Ann. § 62-1-116); *Ernst & Ernst v. Underwriters National Assurance Co.*, 381 N.E.2d 897, 899 (Ind. Ct. App. 1978) (quoting Ind. Code § 25-2-1-23 (1971)). Nevertheless, courts in Tennessee and Indiana held that the client, not the accountant, was the holder of the privilege those statutes created. *Federal Insurance*, 816 S.W.2d at 331; *First Community*, 663 N.E.2d at 222; *Ernst*, 381 N.E.2d at 899. We likewise hold that the client, not the CPA, is the holder of the privilege that

section 27 creates.

¶ 44                      C. The Testamentary Exception

¶ 45    Tibble seems to admit that the privilege in section 27 is not absolute ("Contemnor does not claim that the privilege creates an 'absolute civil bar' "). Indeed, the supreme court implied in *Grand Jury* that the privilege must give way if " '[t]he *injury* that would inure to the relation by the disclosure of the communications' " would be less than " '*the benefit* thereby gained for the correct disposal of litigation.' " (Emphases in original.) *Grand Jury*, 124 Ill. 2d at 475 (quoting Wigmore, *supra* § 2285, at 527).

¶ 46    In a will contest, the benefit of disclosure outweighs any injury to the relationship between CPAs and their clients. See *Lamb*, 124 Ill. App. 3d at 694. " ' "In contests over the validity of a will, where both sides[,] the executor on the one hand and the heirs or next of kin on the other[,] claim under and not adversely to the decedent, the assumption should prevail that the decedent would desire that the validity of his will should be determined in the fullest light of the facts." ' " *In re Estate of Wilson*, 416 A.2d 228, 236 (D.C. 1980) (quoting *In re Estate of Koenig*, 78 N.W.2d 364, 369 (Minn. 1956), quoting Charles T. McCormick, Handbook of the Law of Evidence § 105, at 217 (1954)). See also E.S. Stephens, *Waiver of Attorney-Client Privilege by Personal Representative or Heir of Deceased Client or by Guardian of Incompetent*, 67 A.L.R.2d 1268, § 1 (1959) ("[M]any courts considering the attorney-client privilege have said that in controversies between heirs, devisees, and personal representatives of a decedent, communications between the decedent and [the decedent's] attorney were not privileged, because the proceedings were not adverse to the decedent or to the estate, whose interest was simply in ascertaining the truth. This rule has often been applied in will contests."). Under the testamentary exception, information or evidence an *attorney* received from the decedent while assisting the decedent with estate planning would be admissible in a subsequent will contest. *Lamb*, 124 Ill. App. 3d at 694. We see no reason to regard the exception as inapplicable if a CPA rather than an attorney assisted the client with estate planning. We conclude that, in this will contest, there is a testamentary exception to the privilege in section 27. 225 ILCS 450/27 (West 2012).

¶ 47                 D. Alternatively, a Waiver of the Privilege

¶ 48    Brunton cites *Continental Illinois*, 360 Ill. at 458, in which the supreme court said: "An executor stands in the shoes of his testator with respect to his personal property, and his ownership of the property is but a continuation of the ownership of the decedent." That is not quite the same as saying the executor succeeds to an evidentiary privilege held by the testator, but one could draw that inference, considering that the assertion or waiver of a privilege could affect the disposition of the testator's personal property.

¶ 49    With respect to the attorney-client privilege, the common-law rule is as follows:

> "The authorities recognize that the attorney-client privilege exists only in favor of the client, and they agree that at common law, under appropriate circumstances after the client's death, the personal representative of his estate, and probably his heirs, may waive the privilege on behalf of the deceased. The appropriate circumstances are generally those under which a waiver would operate in the interest of the client, his estate, or persons claiming under him, and would not damage the decedent's reputation." Stephens, *supra* § 1.

¶ 50　　　　We see no reason to treat the accountant-client privilege differently. The personal representative may waive the privilege in the interest of the estate or in the interest of persons claiming under the decedent. If an heir challenges the will by alleging undue influence, it is in the interest of the estate that "the validity of [the] will *** be determined in the fullest light of the facts." (Internal quotation marks omitted.) *Estate of Wilson*, 416 A.2d at 236. By waiving the accountant-client privilege, a personal representative can benefit the estate by having the validity of the will determined in the fullest light of the facts. "Since the client could have waived the privilege to protect himself or to promote his interest, it is reasonable to conclude that, after his death, his personal representative stands in his shoes for the same purposes." *In re Estate of Colby*, 723 N.Y.S.2d 631, 634 (N.Y. Sup. Ct. 2001).

¶ 51　　　　The supreme court has held that the heirs of the decedent may waive the attorney-client privilege for the benefit of the estate. *Fossler v. Schriber*, 38 Ill. 173, 173-74 (1865). It follows that they, too, may waive the accountant-client privilege for the benefit of the estate.

¶ 52　　　　In the trial court, respondents requested an order compelling Striegel to produce the estate planning documents that Brunton sought in her subpoenas. Robert Kruger and the other heirs have filed briefs with us, in which they urge us to affirm the trial court's discovery order of April 11, 2013. Hence, the personal representative and the other heirs have waived the accountant-client privilege held by Helen and Gordon Kruger. See *id.*; *Colby*, 723 N.Y.S.2d at 634; Stephens, *supra* § 1. This is another reason to affirm the trial court's judgment, apart from the testamentary exception.

¶ 53　　　　　　　　　　　　　　　　III. CONCLUSION

¶ 54　　　　For the foregoing reasons, we affirm the trial court's judgment in part and vacate it in part. We affirm the discovery order of April 11, 2013, but we vacate the finding of contempt.

¶ 55　　　　Affirmed in part and vacated in part.