# Illinois Official Reports

## Supreme Court

---

### *Brunton v. Kruger*, 2015 IL 117663

---

| | |
|---|---|
| Caption in Supreme Court: | JUNE BRUNTON, Appellee, v. ROBERT KRUGER *et al.* (Matthew F. Tibble, Contemnor-Appellant). |
| Docket No. | 117663 |
| Filed<br>Rehearing denied | March 19, 2015<br>May 26, 2015 |
| Decision Under Review | Appeal from the Appellate Court for the Fourth District; heard in that court on appeal from the Circuit Court of McLean County, the Hon. Elizabeth Robb, Judge, presiding. |
| Judgment | Appellate court judgment affirmed.<br>Circuit court judgment affirmed.<br>Cause remanded. |
| Counsel on Appeal | Pretzel & Stouffer, Chtrd., of Chicago (Robert Marc Chemers, Richard M. Waris, Matthew Tibble and Philip G. Brandt, of counsel), for appellant.<br><br>Darrell E. Dies, of Eureka, and Justin J. Karubas and Ryan A. Biller, of Rolewick & Gutzke, P.C., of Wheaton, for appellees.<br><br>Mercer Turner, of Bloomington, for appellee June Brunton. |
| Justices | CHIEF JUSTICE GARMAN delivered the judgment of the court, with opinion.<br>Justices Freeman, Thomas, Kilbride, Karmeier, Burke, and Theis concurred in the judgment and opinion. |

**OPINION**

¶ 1     The circuit court of McLean County held attorney Matthew F. Tibble in direct, but noncontumacious, civil contempt after he refused to comply with an order to disclose certain documents that were the subject of discovery requests in the underlying will contest. Tibble, who represented the accounting firm of Striegel, Knobloch & Company, LLC, cited the accountant's privilege provision of the Illinois Public Accounting Act (225 ILCS 450/27 (West 2012)) as the basis for his refusal to comply. The appellate court vacated the contempt finding, but otherwise affirmed the judgment of the circuit court ordering release of the documents. 2014 IL App (4th) 130421.

¶ 2     This court granted Tibble's petition for leave to appeal pursuant to Supreme Court Rules 304(b)(5) and 315. Ill. S. Ct. Rs. 304(b)(5), 315 (eff. Feb. 26, 2010). For the following reasons, we affirm the judgment of the appellate court.

¶ 3                                        BACKGROUND

¶ 4     The underlying litigation involves a will contest brought by June Brunton, the daughter of Helen P. and Gordon J. Kruger, against her brother, Robert Kruger, as trustee of the trusts established by their late parents and as personal representative of their estates (Estates), and against Robert and other family members as individuals. Brunton, who was not named a beneficiary of the trusts, alleges undue influence by certain family members and her mother's diminished capacity at the time the trust documents were executed.

¶ 5     The elder Krugers consulted with the accounting firm of Striegel, Knobloch & Company, LLC (Striegel) during their estate planning process. They provided Striegel with confidential information, including information about their family, income, assets, and estate planning goals. Striegel, in turn, provided estate planning information to the attorney who prepared the Krugers' trust documents and "pour over" wills.

¶ 6     Both Brunton and the Estates issued subpoenas to Dennis Knobloch, a certified public accountant (CPA) at Striegel, seeking discovery of the information and documents provided by the Krugers to Striegel. The Estates subsequently issued a deposition subpoena to Knobloch, seeking the same information.

¶ 7     Another CPA at Striegel complied with the Estates' subpoenas, turning over all of the documents in its possession that related to the Krugers' estate planning. However, Striegel did not provide these documents to Brunton, who then filed a motion to compel compliance with her subpoena. Striegel invoked section 27 of the Act, which governs the confidentiality of records or information obtained by a certified public accountant acting in his confidential capacity as a CPA. The circuit court ordered Striegel to produce tax documents, but held that the estate planning documents were privileged under section 27. Striegel complied.

¶ 8     Brunton then issued deposition subpoenas to a Striegel CPA and a non-CPA employee, seeking production of the estate planning documents that the court had previously ruled privileged. Striegel filed a motion to quash the subpoenas, again invoking section 27.

¶ 9     At a subsequent hearing, the circuit court again found the estate planning documents privileged, but held that Striegel had waived the privilege by providing the documents to the personal representative of the Krugers' Estates. In addition to waiver, the circuit court found

that a testamentary exception to the statutory privilege applied in this case, where the donative and testamentary intent of now-deceased clients were at issue, one of the CPA advisors was deceased and one was no longer competent, and the attorney who prepared the wills and trust documents was also deceased.

¶ 10     Based on waiver and the testamentary exception, the circuit court denied the motion to quash and ordered Striegel to produce the documents. Striegel's attorney, Tibble, refused to comply with the discovery order and was found in contempt and fined $100, thus allowing the matter to be taken to the appellate court.

¶ 11     The appellate court held that the client, not the CPA, is the holder of the privilege (2014 IL App (4th) 130421, ¶ 43), and that the statutory accountant's privilege is subject to the same testamentary exception as the common law attorney-client privilege (*id.* ¶ 46). The appellate court held, in the alternative, that the personal representative and other heirs had waived the privilege by filing briefs with the appellate court in which they urged the court to affirm the circuit court's discovery order.

¶ 12     Thus, the appellate court vacated the finding of contempt, but otherwise affirmed the circuit court's judgment.

¶ 13                                                    ANALYSIS

¶ 14     The parties present several issues. Appellant Tibble asks: (1) whether the accountant's privilege belongs to the client who communicated information to the accountant or to the accountant who received the information; (2) whether a testamentary exception is applicable to the accountant's privilege; and (3) whether the holder of the privilege has waived it.

¶ 15     Appellee Brunton argues that the information she seeks from Striegel is not "confidential information acquired in the course of public accounting," and, thus, section 27 is not implicated.

¶ 16     The other appellees, the trustee/executor and the beneficiaries of the wills and trusts, urge this court to affirm the judgments below. Specifically, they argue that the privilege belongs to the client and, thus, to the client's estate. In the alternative, they argue that if the privilege belongs to the accountant, a testamentary exception to the privilege applies, and that the accounting firm waived the privilege when it produced documents in response to the Estates' subpoena.

¶ 17                         Acting in the Capacity of Licensed or Registered CPA

¶ 18     If Brunton is correct that the information at issue was not "obtained by [the accountant] in his confidential capacity as a licensed or registered CPA," then section 27 does not apply. She points to section 8.05(a) of the Act, which defines "Accountancy activities":

>     "(a) Accountancy activities are services performed by a CPA, including:
>
>         (1) signing, affixing, or associating the names used by a person or CPA firm to any report expressing an assurance on a financial statement or disclaiming an opinion on a financial statement based on an audit or examination of that statement or to express assurance on a financial statement;
>
>         (2) other attestation engagements not otherwise defined in paragraph (1); or

(3) offering to perform or performing one or more types of the following services involving the use of professional skills or competencies: accounting, management, financial or consulting services, compilations, internal audit, preparation of tax returns, furnishing advice on tax matters, bookkeeping, or representations of taxpayers; this includes the teaching of any of these areas at the college or university level." 225 ILCS 450/8.05(a) (West Supp. 2013).

¶ 19 Based on this definition, she argues that the accountant privilege of section 27 applies only to "financial statement certification," and that Striegel's actions "encroached into another licensed profession, the practice of law." Specifically, she asserts that Striegel suggested that the Krugers' wills contain *in terrorem* clauses and conveyed the Krugers' testamentary intent to the attorney who drafted their wills and trust documents. These acts, she argues, fall outside the statutory definition of accounting activities.

¶ 20 The appellate court properly rejected Brunton's narrow interpretation of section 8.05, noting that "auditing financial statements is not the only service that CPAs offer to the public—even though they alone are allowed to perform that particular service." 2014 IL App (4th) 130421, ¶ 32. Certified public accountants use their " 'professional skills or competencies' " (*id.* (quoting Pub. Act 98-254, § 10 (eff. Aug. 9, 2013) (adding 225 ILCS 450/8.05))), to provide estate planning services (*id.* ¶ 33). The appellate court concluded that the privilege of section 27 applies to information obtained by an accountant in the course of providing estate planning services, just as it applies to information obtained by an accountant providing one of the services expressly listed in section 8.05(a). Indeed, the court noted, "it is unclear why the legislature would care about confidentiality when the CPA audited a financial statement but would not care about confidentiality when the CPA helped a client with estate planning." *Id.*

¶ 21 We agree with the appellate court's analysis. In addition, we note that section 8.05(a), by using the word "including," indicates a legislative intent that the list of accounting functions that follows is nonexhaustive. See, *e.g.*, *People v. Perry*, 224 Ill. 2d 312, 331 (2007) (interpreting the word "including" to mean that the specified list of items is illustrative, not exhaustive). Because professional accountants regularly provide the types of services that Striegel provided to the Krugers, and because the information was provided to a Striegel accountant acting "in his confidential capacity as a licensed or registered CPA" (225 ILCS 450/27 (West Supp. 2013)), such information comes within the scope of the statutory accountant privilege.

¶ 22                                                  Holder of the Privilege

¶ 23 At the time this dispute arose,[1] section 27 of the Public Accounting Act provided: "Accountant as witness" "A licensed or registered [CPA] shall not be required by any court to divulge information or evidence which has been obtained by him in his confidential capacity as a licensed or registered [CPA]." 225 ILCS 450/27 (West 2012).

¶ 24 This case requires us to interpret section 27 to determine whether the privilege is held by the CPA or by the client who provided the information. In doing so, our primary objective is

---

[1]Section 27 has since been amended to read: "Confidentiality of licensee's and registrant's records." Pub. Act 98-254, ¶ 10 (eff. Aug. 9, 2013).

"to ascertain and give effect to the intent of the legislature." *Gaffney v. Board of Trustees of the Orland Fire Protection District*, 2012 IL 110012, ¶ 56. The best indication of that intent is the language of the statute itself, which must be given its plain and ordinary meaning. *People v. Hammond*, 2011 IL 110044, ¶ 53. "We will not depart from the plain statutory language by reading into it exceptions, limitations, or conditions that conflict with the expressed intent of the legislature." *Gaffney*, 2012 IL 110012, ¶ 56. Further, we will not utilize extrinsic aids of statutory interpretation unless the statutory language is unclear or ambiguous. *Id.* "A statute is ambiguous if it is capable of being understood by reasonably well-informed persons in two or more different ways." *Krohe v. City of Bloomington*, 204 Ill. 2d 392, 395-96 (2003). Because interpretation of a statute is a question of law, our review is *de novo*. *In re Commitment of Fields*, 2014 IL 115542, ¶ 32.

¶ 25 The circuit court held that the accountant who rendered accounting services in his confidential capacity is the holder of the privilege and may choose to invoke it. Tibble defends this position, pointing to what he describes as the "plain and unambiguous language" of the section. However, he does not identify the specific words in section 27 that express this plain meaning. Tibble also argues that for over half a century, until the appellate court's decision in the present case, every state and federal court that has considered this statute has held that the privilege of section 27 belongs to the accountant.

¶ 26 Brunton and the personal representative of the Estates support the result reached by the appellate court, which neither relied on the plain meaning of the statutory language nor found the statute ambiguous. Instead, the court observed that it is "rather simplistic to reason that *** the CPA rather than the client is the intended holder of the privilege" and stated that section 27 "does not exist for the benefit of CPAs; it exists for the benefit of clients." 2014 IL App (4th) 130421, ¶ 42. The court stated that it disagreed with the federal decisions and that it found the reasoning of the first such case to consider the holder of the privilege unconvincing. 2014 IL App (4th) 130421, ¶¶ 40-41 (discussing *Dorfman v. Rombs*, 218 F. Supp. 905 (N.D. Ill. 1963)).

¶ 27 We first address Tibble's argument that the question of who holds the privilege of section 27 has been well settled for decades. This court has never had occasion to address this question. Our appellate court has had several occasions to consider section 27, but the issues presented in those cases involved the scope of the privilege—which types of information and documents were privileged—not the holder of the privilege. See *In re October 1985 Grand Jury No. 746*, 154 Ill. App. 3d 288, 296 (1987) (accountant could not refuse to disclose information about his clients' tax returns and accompanying work papers to a grand jury that was investigating the clients for alleged failure to pay retailers' occupation tax, as the information sought by the grand jury was not confidential); *In re Estate of Berger*, 166 Ill. App. 3d 1045, 1075-76 (1987) (information given to an accountant in connection with his preparation of audits and an accounting of the funds of an incompetent adult were not privileged because they were prepared for the purpose of filing in court and were, thus, public records); *FMC Corp. v. Liberty Mutual Insurance Co.*, 236 Ill. App. 3d 355, 356 (1992) (in case where both the client and the accountant opposed production of the documents, the "sole issue on appeal [was] whether the statutory accountant privilege protects the subpoenaed documents from disclosure"). In *FMC Corp.*, as in *October 1985 Grand Jury* and *Estate of Berger*, the appellate court assumed, without deciding, that the accountant was the holder of the privilege. In none of the three cases did this assumption affect the outcome of the case.

¶ 28    Thus, because this question has not been answered by this court or our appellate court, the doctrine of *stare decisis* plays no role in our analysis.

¶ 29    In *FMC Corp.*, the appellate court referred in a footnote to prior federal cases that had "construed the accountant privilege statute of Illinois as having established a privilege which can be claimed only by the accountant." *Id.* at 357 n.1 (citing cases). The first such case was *Dorfman*.

¶ 30    In *Dorfman*, the Internal Revenue Service had issued a subpoena to an accountant, seeking disclosure of materials and information that had been provided to him by his clients, the Dorfmans. They brought an action seeking to enjoin the accountant to prevent his disclosure of the information to the IRS. *Dorfman*, 218 F. Supp. at 905. The court commented that it "[a]dvisedly" referred to the statutory privilege of section 27 "as an accountant privilege and not an accountant client privilege *** because of the obvious language" of the provision." *Id.* at 907. After quoting the provision, which is substantively identical to the present language, the court observed:

> "The statute does not even mention the term client. There having been no accountant client or accountant privilege at common law the statute must speak for itself: and if indeed it does so speak for itself, then it is clear that what the Illinois Legislature did in fact create was an accountant privilege, a privilege whose benefit was to inure to, and which could only be claimed by, an accountant. To this extent such a privilege would more closely resemble the attorney 'work product' privilege and not the right of a client as founded in the attorney client privilege." *Id.*

¶ 31    Subsequent federal cases have accepted this interpretation of section 27 without conducting further analysis. See, *e.g.*, *Western Employers Insurance Co. v. Merit Insurance Co.*, 492 F. Supp. 53, 55 (N.D. Ill. 1979) (declining to order respondent's accounting firm to produce documents listed in subpoena *duces tecum* on the basis of Illinois statutory accountant privilege; finding that the documents sought in subpoena *duces tecum* directed at the respondent client are not privileged because the privilege "inures only to the accountant. It cannot be raised or claimed by the client."); *Stopka v. American Family Mutual Insurance Co.*, 816 F. Supp. 2d 516, 525 (N.D. Ill. 2011) (plaintiff property owners could not assert the privilege on behalf of their accountant, who did not invoke it on his own behalf, and they could not rely on his privilege to protect documents that they themselves possessed). Thus, these decisions provide no greater support for Tibble's position than did *Dorfman*.

¶ 32    Although section 27 does not contain the word "client," we agree with the appellate court that the reasoning of *Dorfman* is unconvincing. The presence of the word "accountant" in the title of the section and the term "CPA" in the provision itself, combined with the absence of the word "client," are not sufficient bases for reaching this conclusion.

¶ 33    However, the key words of the statute, which speak directly to the holder of the privilege, are the words "shall not be required by any court." Section 27 does not state that the client shall not be required by any court to divulge his information; it states that the accountant shall not be required to do so. Under the plain meaning of these words, even if a client were to consent to disclosure by the accountant, the statute still protects the accountant from being required by a court to divulge the information.

¶ 34     Although we find that section 27 unambiguously confers its privilege on the accountant, we find additional support for this conclusion in Illinois's statutory scheme governing evidentiary privileges.

¶ 35     The legislature has created a number of evidentiary privileges that are codified in the Code of Civil Procedure. Specifically, these privileges are contained in article VIII, Evidence, part 8, Privileged Communications. They include: Husband and wife (735 ILCS 5/8-801 (West 2012)); Physician and patient (735 ILCS 5/8-802 (West 2012)); Confidentiality of Statements Made to Rape Crisis Personnel (735 ILCS 5/8-802.1 (West 2012)); Confidentiality of statements made to personnel counseling victims of violent crimes (735 ILCS 5/8-802.2 (West 2012)); Informant's privilege (735 ILCS 5/8-802.3 (West 2012)); Clergy (735 ILCS 5/8-803 (West 2012)); Union agent and union member (735 ILCS 5/8-803.5 (West 2012)); Reporter's privilege (735 ILCS 5/8-901 to 8-909 (West 2012)); Voter's privilege (735 ILCS 5/8-910 (West 2012)); Language interpreter's privilege (735 ILCS 5/8-911 (West 2012)); and Interpreter for the deaf and hard of hearing's privilege (735 ILCS 5/8-912 (West 2012)).

¶ 36     Notably, the accountant privilege is codified in the Public Accounting Act, which is part of chapter 225 of the Illinois Compiled Statutes, Professions and Occupations. The Public Accounting Act is not part of the legislatively created body of evidentiary privileges listed above. Rather, it is expressly tied to the legislative scheme enacted to regulate the practice of the profession of public accounting in the state. This context suggests that the accountant privilege was not intended to function purely as an evidentiary rule, but also as an attribute of the accounting profession.

¶ 37     Other acts within chapter 225, regulating the practice of other professions or skills, also contain privilege provisions. For example, the Clinical Psychologist Licensing Act provides that "[n]o clinical psychologist shall disclose any information he or she may have acquired from persons consulting him or her in his or her professional capacity, to any persons except only: *** with the expressed consent of the client, or in the case of his or her death or disability, or his or her personal representative or other person authorized to sue or of the beneficiary of an insurance policy on his or her life, health or physical condition." 225 ILCS 15/5 (West 2012). The Clinical Social Work and Social Work Practice Act provides that "[n]o licensed clinical social worker or licensed social worker shall disclose any information acquired from persons consulting the social worker in a professional capacity, except that which may be voluntarily disclosed under the following circumstances: *** the written consent of the person who provided the information." 225 ILCS 20/16(1)(b) (West 2012) ("Privileged Communications and Exceptions").

¶ 38     Several other acts within chapter 225 also contain provisions titled "Privileged communications and exceptions." Each uses the same language, stating that no member of the profession "shall disclose," absent written consent of the person who provided the information. See Marriage and Family Therapy Licensing Act (225 ILCS 55/70(a) (West 2012)); Professional Counselor and Clinical Professional Counselor Licensing and Practice Act (225 ILCS 107/75(a) (West 2012)); Genetic Counselor Licensing Act (225 ILCS 135/90(a) (West 2012)).

¶ 39     In each of these professions, as in the profession of accounting, clients provide sensitive and private information to a professional with the expectation that the information will be held in confidence. However, the legislature has chosen not to use the same language in section 27

of the Public Accounting Act that it has used repeatedly in acts governing other professions with similar privacy concerns. This separate treatment of privileges in the context of the accountant-client relationship, combined with the plain language of section 27, reveals a legislative intent to confer the privilege upon the accountants who provide these services.

¶ 40 Another attribute of the statutory scheme regulating the practice of accounting supports this conclusion. The Public Accounting Act is one of eight statutes governing the practice of specific trades or professions that are subject to the Regulatory Sunset Act (5 ILCS 80/4.34 (West Supp. 2013)). If these statutes governing the practice of occupational therapy, accounting, veterinary medicine, and other careers are not reenacted by January 1, 2024, they will be automatically repealed. The Public Accounting Act, including its privilege provision, is directed entirely at the conduct of members of the profession. It imposes licensure requirements and other standards, and it also confers a privilege on members of the profession when they obtain confidential information while acting within the scope of their duties. In contrast, none of the evidentiary privilege statutes contained in the Code of Civil Procedure are subject to automatic repeal, thus signaling a legislative intent to treat the accountant privilege differently from the evidentiary privileges.

¶ 41 Our conclusion that the legislature intended the privilege to be held by the accountant and not by the client is further bolstered by the recent reenactment of the Public Accounting Act. Under the earlier version of the Regulatory Sunset Act (5 ILCS 80/4.24 (West 2012)), the Public Accounting Act was due for automatic repeal as of January 1, 2014. It was reenacted with various revisions by Public Act 98-254, effective August 9, 2013. House Bill 2726 was adopted with 104 votes in favor, no votes against, and one vote of present. 98th Ill. Gen. Assem., House Proceedings, Apr. 12, 2013, at 141 (statements of Representative Turner). During the Senate Session at which the vote was taken, Senator Martinez offered the bill, stating: "House Bill 2726 is an initiative of the Illinois Certified Public Accountant Society and extends the sunset of the Illinois Public Acting—Accounting Act by ten years and makes several other changes." 98th Ill. Gen. Assem., Senate Proceedings, May 14, 2013, at 96 (statements of Senator Martinez). With no discussion, the Senate voted to pass House Bill 2726 with 53 ayes, no nays, to adopt the bill. 98th Ill. Gen. Assem., Senate Proceedings, May 14, 2013, at 96 (statements of Senator Link).

¶ 42 This acknowledgment that the text of the Act was proposed by a professional accounting organization, combined with a virtually unanimous vote, indicates that the legislature intended to defer to the profession's own formulation of the policies and standards that should govern it. The impetus behind the adoption of this bill and the amendments therein came from the accounting profession, not a legislative concern about evidentiary rules of civil procedure or client privilege.

¶ 43 One of the amendments made by Public Act 98-254 was to change the title of section 27 from "Accountant as witness" to "Confidentiality of licensee's and registrant's records." We have observed that while a statute's title cannot be used to limit the plain meaning of statutory text, it can provide guidance in resolving statutory ambiguities. *Alvarez v. Pappas*, 229 Ill. 2d 217, 230-31 (2008). This new title, which refers to the accountant's records, not to the client's information, suggests that the intent of the drafters—the Illinois Certified Public Accountant Society—was to confer the privilege on the accountant for the purpose of maintaining confidentiality of information contained in the accountant's records if that information was

"obtained by him in his confidential capacity" as a CPA. The legislature adopted this proposed change in title without discussion or amendment, thereby deferring to the Society as the proper arbiter of professional standards and conduct for accountants.

¶ 44 Finally, Brunton calls our attention to a section of the Administrative Code titled "Confidential Client Information," which provides that "[a] registered public accountant shall not disclose any confidential client information without the specific consent of the client." 68 Ill. Adm. Code 1430.3010(a) (2005). This language, she asserts "expressly provides that a client can waive the accountant privilege," which, she asserts, means that the client holds the privilege.

¶ 45 She conflates the accountant's duty of confidentiality, which is owed to the client, with the statutory privilege under which the accountant "shall not be required by any court to divulge information or evidence which has been obtained by him in his confidential capacity as a licensed or registered [CPA]." 225 ILCS 450/27 (West 2012). While the client may waive the duty of confidentiality, this does not mean that the client may waive the accountant's privilege. In short, the duty of confidentiality does not inform our statutory analysis of section 27.

¶ 46 We hold that the privilege created by section 27 of the Public Accounting Act is held by the accountant and may be asserted or waived by him. The meaning of the statutory language is plain, and our reading of it recognizes the legislative choice to treat this privilege differently than others in the legislative scheme regarding privileges. If the legislature would prefer to bring the accounting privilege into line with the other privileges created by the various acts in chapter 225, it may do so by amending section 27.

¶ 47 If the client is still living, the privilege does not bar the client from voluntarily producing the information. If the client is involved in litigation and the information is otherwise discoverable, a court may order the client who is in possession of the information to disclose it. See, *e.g.*, *Stopka*, 816 F. Supp. 2d at 525 ("Plaintiffs cannot rely on a privilege that belongs to their accountant to protect documents that they themselves possess."); *Western Employers*, 492 F. Supp. at 55 & n.2 (documents in the possession of the client are not privileged and must be produced; client is not required to obtain documents from the accountant any papers not currently in the client's possession). If, however, the client is deceased and the accountant invokes the privilege, the information, which may be highly relevant in the litigation, may not be available.

¶ 48                                        Testamentary Exception

¶ 49 Both the circuit court and the appellate court found that the accountant privilege is subject to a testamentary exception and that the exception would apply in this case due to the nature of the underlying dispute. They did so by analogy to the testamentary exception that this court has recognized in the context of attorney-client privilege.

¶ 50 Just as the interpretation of statutory language is a question of law, the existence of an exception to a statutory legal rule is also a question of law, and our review is *de novo*. *Fields*, 2014 IL 115542, ¶ 32.

¶ 51 The testamentary exception to the attorney-client privilege is well settled law. In *Wilkinson v. Service*, 249 Ill. 146, 150-51 (1911), this court held that while conversations between an attorney and a deceased client might be privileged when offered in support of a claim against the client's estate, the conversations would be admissible in a will contest brought by his

daughter, who received nothing under the will, claiming that the decedent was not of sound mind when he made the will.

¶ 52 In its analysis of this question, the appellate court in the present case cited its own earlier decision in *Lamb v. Lamb*, 124 Ill. App. 3d 687 (1984), which, in turn, relied on *Wilkinson*. After noting that during her lifetime, the decedent, Bessie Lamb, could have asserted a privilege against disclosure of conversations she had with her attorney, the court announced the following holding with regard to the attorney-client privilege after the death of the client:

> "While upon the death of the client, the [attorney-client] privilege survives in favor of his estate in regard to claims by outsiders against the estate [citation], it does not apply to a communication relevant to an issue between parties who claim through the same deceased client, regardless of whether the claims are by testate or intestate succession or by *inter vivos* transaction. *** While it had been suggested that the attorney may not disclose facts which would tend to invalidate the will [citation], and that he may not disclose confidential communications [citation], the actual holding of the cases which pass upon the point has been that neither side may assert the privilege." (Emphasis and internal quotation marks omitted.) *Id.* at 693.

¶ 53 Because *Lamb* involved a will contest among the children of the decedent, and because all parties were either her devisees or claimed through her by *inter vivos* transaction or by testate or intestate succession, the court held that the attorney-client privilege was not applicable and, therefore, the attorney's testimony as to his conversations with the decedent should have been admitted. *Id.* at 694.

¶ 54 More recently, this court observed:

> "[G]enerally the attorney-client privilege survives the client's death. [Citations.] A different rule applies, however, with respect to a will. In such a case, there is only a temporary privilege. [Citation.] Where an attorney prepares a will for a client and witnesses the same, the privilege only exists during the lifetime of the client. [Citation.] The rationale behind this limited exception to the privilege is that a decedent would (if one could ask him) forgo the privilege so that the distribution scheme he actually intended can be given effect." *DeHart v. DeHart*, 2013 IL 114137, ¶ 69.

¶ 55 The analogy to the present case is clear, but with one major difference. The privilege at issue here is the statutory accountant privilege. The attorney-client privilege is a common law doctrine, and its testamentary exception is also a common law rule. Nevertheless, the appellate court concluded that there was "no reason" to treat the accountant's privilege any differently from the attorney-client privilege when the CPA assisted the client with estate planning. 2014 IL App (4th) 130421, ¶ 46.

¶ 56 Tibble argues that it is inappropriate to "graft" a common law exception onto a statutory rule, noting the often repeated principle of statutory construction that we "will not depart from the plain statutory language by reading into it exceptions, limitations, or conditions that conflict with the expressed intent of the legislature." *Gaffney*, 2012 IL 110012, ¶ 56.

¶ 57 The executor and beneficiaries echo the appellate court's reasoning, asserting that "individuals whose accountants assist in the estate planning process should receive no greater benefit in litigation than individuals who have their estate plans prepared solely by a licensed attorney." They also argue that recognizing a testamentary exception would be consistent with Illinois's public policy of encouraging disclosure in litigation.

¶ 58    Beginning, as we must, with the language of the statute, we note that section 27 contains a single exception: "This Section shall not apply to any investigation or hearing undertaken pursuant to this Act." 225 ILCS 450/27 (West 2012).

¶ 59    Citing *People ex rel. Department of Professional Regulation v. Manos*, 202 Ill. 2d 563 (2002), Tibble argues that the existence of this single, narrow exception in the statute indicates a legislative intent that no other exceptions be made. In *Manos*, the Department of Professional Regulation sought to enforce a subpoena *duces tecum* against several periodontists who were under administrative investigation. *Id.* at 566. The specific issue addressed by this court was whether the statutory physician-patient privilege (735 ILCS 6/8-802 (West 2000)) barred disclosure of patient records. *Manos*, 202 Ill. 2d at 568.

¶ 60    We noted that the statutory privilege was "not limitless" and that the legislature had "specifically delineated 10 exceptions in which the privilege may yield," none of which referred to investigations by the Department. *Id.* Thus, we observed:

> "To hold as the Department suggests would force this court to read a provision into the Civil Administrative Code that is not there and to read an exception into the physician-patient privilege statute that also is not there. This we are not prepared to do because ' "[t]he only legitimate function of the courts is to declare and enforce the law as enacted by the legislature, to interpret the language used by the legislature where it requires interpretation, and not to annex new provisions or substitute different ones, or read into a statute exceptions, limitations, or conditions which depart from its plain meaning." ' " *Id.* at 568-69 (quoting *Bronson v. Washington National Insurance Co.*, 59 Ill. App. 2d 253, 261-62 (1965), quoting *Belfield v. Coop*, 8 Ill. 2d 293, 307 (1956)).

¶ 61    After establishing that the periodontists, as dental surgeons, fell within the ambit of the statutory privilege (*id.* at 574), we held that "investigations conducted by the Department are not listed as an exception under the physician-patient privilege to compel physicians and surgeons to produce confidential patient records." *Id.* at 567-77. Thus, we declined to accept the Department's invitation to recognize a judge-made exception to the privilege. *Id.*

¶ 62    *Manos* provides an exact parallel to the present case. Section 27 contains a single exception. Under this exception, if an accountant is the subject of a professional disciplinary investigation or hearing, he cannot claim the privilege. We are not inclined to create another exception to the statutory rule. See also *Snyder v. Poplett*, 98 Ill. App. 3d 359 (1981) (holding that the common law testamentary exception did not apply to the statutory clergy privilege and that a pastor, therefore, did not have to testify in a will contest regarding one of his congregants).

¶ 63    We must, therefore, reject the Estates' and beneficiaries' public policy argument that the two professions, accounting and law, should be treated similarly in the context of a will contest merely because a testamentary exception to privilege aids the search for truth.

¶ 64    The existence of a statutory privilege of any kind necessarily means that the legislature has determined that public policy trumps the truth-seeking function of litigation in certain circumstances. See *FMC Corp.*, 236 Ill. App. 3d at 358 ("In considering any privilege, we must be mindful that privileges, by their nature, tend to adversely affect the fact-finding process and often stand as a barrier against illumination of truth. Therefore, privileges are not to be expansively construed because they are exceptions to the general duty to disclose during discovery.").

¶ 65    Thus, when considering whether the spousal privilege should be expanded to include other immediate family members, specifically a child, this court stated:

> "The expansion of existing testimonial privileges and acceptance of new ones involves a balancing of public policies which should be left to the legislature. A compelling reason is that while courts, as institutions, find it easy to perceive value in public policies such as those favoring the admission of all relevant and reliable evidence which directly assist the judicial function of ascertaining the truth, it is not their primary function to promote policies aimed at broader social goals more distantly related to the judiciary. This is primarily the responsibility of the legislature. To the extent that such policies conflict with truthseeking or other values central to the judicial task, the balance that courts draw might not reflect the choice the legislature would make." *People v. Sanders*, 99 Ill. 2d 262, 271 (1983).

¶ 66    We therefore agree with the statement of the appellate court in *FMC Corp.* that:

> "Our legislature has determined that the accountant-client relationship is one of substantial significance and by enactment of section 27 encourages people to make use of professional accounting services and to be frank and candid with such professionals. Accordingly, it is critical to our analysis that we do not carve out a series of exemptions that would emasculate the straightforward language of section 27." *FMC Corp.*, 236 Ill. App. 3d at 358-59.

¶ 67    We hold that the testamentary exception to attorney-client privilege may not be used to defeat the accountant privilege of section 27 of the Public Accounting Act. We will not read in an additional exception to a statute that contains only one express exception, indicating a legislative intent to limit exceptions to that single instance. The creation of such an exception is a matter for the legislature.

¶ 68    Brunton argues that the existence of a testamentary exception to the accountant privilege is "immaterial," because determining the validity of the wills and trusts is "more important" than the statutory privilege. She asserts that her claim of undue influence exerted over her parents is more important than the privilege and that it is "something which the law should look into." In effect, she asks this court to create an exception to the privilege without calling it the testamentary exception. She cites the "wisdom" of this court's decision in *People ex rel. Birkett v. City of Chicago*, 184 Ill. 2d 521 (1998), without analysis or argument, as her only support for her assertion that this court should ignore the plain language of a statute because her claim is more important than the policy established by the legislature or the duty of the judiciary to give effect to clear statutory language. In any event, *Birkett* does not support her position. In that case, we were asked to recognize a "deliberative process privilege" to protect certain advice and discussions between government officials concerning formulation of governmental decisions and policy. We declined, stating that the adoption of such a privilege was "best left to the legislature." *Id.* at 522-23.

¶ 69    Because the statutory privilege is held by the accountant, the accountant has invoked the privilege, and there is no exception to the privilege that would compel the accountant to divulge the information, we turn to the question of waiver.

¶ 70                          Waiver of the Privilege

¶ 71        The circuit court ruled that Striegel waived the privilege by complying with the subpoena issued by the Estates, reasoning that because the accountant did not assert privilege with respect to one party in the will contest, he could not assert privilege as to the other party. The appellate court, because it held that the privilege was not held by the accountant, did not consider this question.

¶ 72        Our standard of review is *de novo*. When the facts are not in dispute and credibility of witnesses is not implicated, the question of whether waiver has taken place is a legal one and no deference is owed to the trial court's decision. See *People v. Bannister*, 232 Ill. 2d 52, 66 (2008) (applying *de novo* standard of review to question of defendant's waiver of right to jury trial).

¶ 73        Tibble argues that Striegel's disclosure to the Estates does not constitute waiver of the privilege as to Brunton, because the disclosure was made to a party with a common interest, not to an adverse party.

¶ 74        The executor and beneficiaries argue waiver by Striegel based on failure to invoke the privilege in response to the Estates' subpoenas. The Estates deny that they share a common interest with Striegel.

¶ 75        Brunton also denies that Striegel and the Estates share a common interest. Her allegations of undue influence are against Robert and his wife, not against Striegel, which has no interest in her parents' estates. She suggests that if Striegel and the Estates had a common interest, the accountant would have disclosed the information to the Estates without the need for a subpoena. She also states that Striegel is a defendant in a separate lawsuit brought by the executor, but she does not support this assertion with any documentation. Finally, she argues that Striegel has forfeited the claim of common interest by not raising it in the circuit court.

¶ 76        We reject Brunton's forfeiture claim, finding that Tibble properly preserved the waiver issue in the circuit court, the appellate court, and in his petition for leave to appeal to this court. Even if he did not make a common interest argument in the circuit court, he disputed the issue of waiver. We require parties to preserve issues or claims for appeal; we do not require them to limit their arguments here to the same arguments that were made below.

¶ 77        We must first determine whether the common interest doctrine applies when the alleged common interest is shared by an accountant asserting the privilege of section 27 and one of two parties to litigation, both of whom seek disclosure of the privileged information.

¶ 78        Neither this court nor our appellate court has considered the application of the common interest doctrine in this context. The federal court in *Stopka* stated that the "accountant-client privilege does not extend to communications that are disclosed to third parties unless those parties have a common interest with the disclosing party." *Stopka*, 816 F. Supp. 2d at 524. However, the authority cited in *Stopka* for this statement is this court's decision in *October 1985 Grand Jury*, which makes no mention of common interests. *Id.* (citing *In re October 1985 Grand Jury No. 746*, 124 Ill. 2d at 475).

¶ 79        The common interest doctrine is rooted in the dual representation doctrine, which has a long history as an exception to attorney-client privilege. In *Griffin v. Griffin*, 125 Ill. 430 (1888), this court held that when the grantor and grantee brought a deed to an attorney, already signed and acknowledged, and asked his opinion as to what was necessary to convey the title, statements made to the attorney by the parties in the presence of each other were not

confidential communications, and the attorney could testify regarding those statements in a later suit to set aside the deed. *Id.* at 436.

¶ 80    This court adopted the common interest doctrine in *Waste Management, Inc. v. International Surplus Lines Insurance Co.*, 144 Ill. 2d 178 (1991). At issue were the respective rights and liabilities of insureds and insurers in an underlying case involving environmental damage. *Id.* at 185-86. The insurers sought discovery of the insureds' litigation files in the underlying environmental litigation. *Id.* at 187. The insureds' attorney denied the court's order to produce the files and was held in contempt, creating an issue for appeal. *Id.*

¶ 81    This court first held that the cooperation clause in the insurance contracts imposed "a broad duty of cooperation and is without limitation or qualification." *Id.* at 192. Further, "it cannot seriously be contended that insureds would not be required to disclose contents of any communications they had with defense counsel representing them on a claim for which insurers had the ultimate duty to satisfy." *Id.* Because this was a sufficient basis for finding that the attorney-client privilege did not prevent disclosure of the requested information, the discussion that followed regarding the common interest doctrine was not necessary to the resolution of the case. Nevertheless, this court stated:

> "Evidence scholars have variously stated that under the common interest doctrine, when an attorney acts for two different parties who each have a common interest, communications by either party to the attorney are not necessarily privileged in a subsequent controversy between the two parties. (M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 505.7, at 277 (5th ed. 1990); McCormick, Evidence § 91, at 219 (3d ed. 1984); 8 J. Wigmore, Evidence § 2312, at 603 (McNaughton rev. 1961).)" *Id.* at 193.

Because both the insurers and the insureds had a common interest in defeating or settling the claim against the insureds in the underlying environmental litigation, this court concluded that "the communication by insureds with [their] defense counsel is of a kind reasonably calculated to protect or further those common interests." *Id.* at 194.

¶ 82    This court noted that in the "typical case, where the common interest doctrine has been relied upon to defeat a claim of privilege, the attorney has provided joint or simultaneous representation of the parties." *Id.* However, we concluded that "the doctrine may properly be applied where the attorney, though neither retained by nor in direct communication with the insurer, acts for the mutual benefit of both the insured and the insurer." *Id.*

¶ 83    What Tibble overlooks is that the common interest doctrine is not intended to *protect* a claim of attorney-client privilege or to defeat a claim of waiver of that privilege. Rather, it is intended to *defeat* a claim of privilege when both parties to a lawsuit share a common interest in the communications made in confidence by one of the parties to its attorney. Thus, even if we were to hold that the common interest doctrine applies to the accountant privilege as it does to the attorney-client privilege, it would not support Striegel's refusal to disclose information to Brunton. Indeed, given the Estates' position that the information should be provided to Brunton, the common interest doctrine favors disclosure because she and the Estates share a common interest in the contents of communications made by the Krugers to Striegel.

¶ 84    Moreover, Tibble's blind assertion that there is no dispute that the Estates share a common interest with Striegel that is adverse to Brunton is unsupported by any reasoning. He appears to be asserting that his interest is in preserving the Krugers' confidences and that because the

Estates "stand in their shoes," the Estates must share that interest. He fails to acknowledge that the Estates actively seek disclosure of the information.

¶ 85     The waiver analysis in this case is actually much simpler than the parties acknowledge. The accountant who held the privilege disclosed it to one party in the underlying litigation. Although he did so in response to a subpoena, he does not assert that the disclosure was involuntary. Indeed, he claims to share a common interest with the party to which he made the disclosure.

¶ 86     This court has stated that the attorney-client privilege is waived when the client, the holder of the privilege, voluntarily discloses or consents to the disclosure of privileged information. *Center Partners, Ltd. v. Growth Head GP, LLC*, 2012 IL 113107, ¶ 35 ("The basic, well-settled rule is that when a client discloses to a third-party a privileged communication, that particular communication is no longer privileged and is discoverable or admissible in litigation. Michael H. Graham, Evidence: An Introductory Problem Approach 563 (2002) ('The holder of the privilege against disclosure of the confidential matter or communication waives the privilege if he or his predecessor while holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the matter or communication ***.')").

¶ 87     Where the accountant privilege is concerned, we have held that the accountant is the holder of the privilege and may invoke it to prevent being compelled to divulge client information. As in the case of attorney-client privilege, when the holder of a privilege voluntarily discloses privileged information, he waives the privilege.

¶ 88     We, therefore, hold that Striegel waived the accountant privilege by providing the requested information to the personal representative of the Krugers' Estates. The firm, therefore, must comply with the court order to disclose the same information to Brunton. We express no opinion as to the privileged nature or waiver status of any information in Striegel's possession that was not divulged to the Estates.

¶ 89                                        CONCLUSION

¶ 90     For the foregoing reasons, we affirm the judgment of the appellate court, finding, however, that the privilege created by the legislature in section 27 of the Public Accounting Act belongs to the accountant, not the client, and that there is no testamentary exception to the privilege. Further, because the accountant waived the privilege by disclosing information to one party in the underlying litigation, he cannot claim the privilege to avoid disclosure of the same information to the other party. See *People v. Burnett*, 237 Ill. 2d 381, 391 (2010) (this court is "in no way constrained by the appellate court's reasoning and may affirm on any basis supported by the record").

¶ 91     Appellate court judgment affirmed.
¶ 92     Circuit court judgment affirmed.
¶ 93     Cause remanded.