2021 IL App (1st) 171839-U

No. 1-17-1839

Order filed February 5, 2021

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 4633 |
| | ) | |
| JAMES DENT, | ) | Honorable |
| | ) | Angela M. Petrone, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE JOHNSON delivered the judgment of the court.
Justice Harris concurred in the judgment.
Presiding Justice Mikva specially concurred.

**ORDER**

¶ 1    *Held*: Defendant forfeited review of his claim that the State's reason for striking prospective juror Dowdy violated *Batson* where he failed to object in the trial court; defendant waived any claims on review regarding the State's reasons for striking prospective jurors Webb Hill and Williams Peck where he made no substantive arguments on those claims in his brief; the trial court's finding that the State's offered reasons for striking prospective jurors Meiley and Clesen were not racially motivated was not clearly erroneous where such reasons were not inherently discriminatory and therefore race-neutral.

¶ 2    Following a jury trial, defendant James Dent (defendant) was convicted of delivery of a controlled substance. Based on his criminal background, defendant was sentenced as a Class X offender to an eight-year prison term. On appeal, defendant contends that he is entitled to a new trial because the State violated *Batson v. Kentucky*, 476 U.S. 79 (1986) by using all of its peremptory strikes on five African-American venirepersons and providing pretextual reasons for striking three of them. For the reasons that follow, we affirm.

¶ 3                                    BACKGROUND

¶ 4    The evidence presented at trial reveals that defendant was arrested on February 25, 2016, and charged by indictment with two counts of delivery of less than one gram of a controlled substance. Defendant rejected a plea agreement for a five-year sentence from the State and instead elected to proceed to a jury trial. As defendant has only raised one issue on appeal related to jury selection, we will confine our discussion of the underlying facts relevant to those pretrial proceedings.

¶ 5    The record reflects that the trial court conducted *voir dire* of prospective jurors on May 30, 2017. There was a total of 34 prospective jurors separated into two groups and questioned for jury selection. The first group consisted of 26 persons: (1) Guiseppe Pallazzolo, (2) Silviane Magallanes, (3) Eva Gonzalez, (4) Ahmed Malik, (5) Charles Servidio, (6) Miss Dowdy[1], (7) Shelia Lufrano, (8) Edward Agase, (9) Maria Ramirez Dias, (10) Frances Ferro, (11) Glynnis Webb Hill, (12) James Janetopoulos, (13) Charles Grier, (14) Richard White, (15) Janet Lamorte, (16) Carla Labriola, (17) Richard Hawke, (18) Angela Whitten, (19) Dalvan Meiley, (20) LaToya Williams Peck, (21) Violet Potocki, (22) John Bobowski, (23) Paula Putziger, (24) Gloria

_____
[1] The record does not indicate a first name for Miss Dowdy.

Rodriguez, (25) Nicole Kaffel, and (26) Shantil Clesen. The second group consisted of eight persons: (27) Rolando Delgado, (28) Diana Fenway, (29) Hiram White, (30) Peter Pechona, (31) Travis McBride, (32) Sangar Sayyad, (33) Frances Tool Gray, and (34) Juan Alaniz.

¶ 6    The trial court began *voir dire* of each group by asking each prospective juror general questions about whether they knew the defendant, the attorneys, police officers or other witnesses. Next, the court admonished the group on the procedures and conduct of the trial itself. The prospective jurors were then questioned about their ability to decide the case without sympathy, bias, or prejudice; whether they could follow the law even if they disagree; and whether they understood the presumption of defendant's innocence. All of the prospective jurors indicated that they could do so and that they understood the admonishments. The trial court also questioned the prospective jurors about whether they could judge the testimony of police officers the same as other witnesses, and whether they would agree not to do any outside research on the case and instead wait until all the evidence was presented before making up their minds. All of the prospective jurors indicated that they understood and could do so. After prospective juror, Potocki, indicated that she was currently involved in a lawsuit, the trial court proceeded to question the prospective jurors individually.

¶ 7    Once the trial court finished questioning the first group of 26 prospective jurors, the State, defense counsel, and defendant joined the trial judge in her chambers to discuss the prospective jurors and whether any of them required further questioning by the parties. The State noted that prospective jurors Grier, Hawke, and Whitten failed to disclose convictions or arrests in their backgrounds. After further questioning of those prospective jurors by the trial court, the State moved to dismiss all three for cause. Prospective jurors Hawke and Whitten were dismissed for

cause over the defense's objection. The State also moved to dismiss prospective juror Lamorte for cause. The defense moved to dismiss prospective juror Potocki for cause.

¶ 8     The record indicates that both the State and the defense used five peremptory strikes in the first group of 26 prospective jurors.  The defense struck prospective jurors Pallazzolo, Lufrano and Agase without objection by the State. The State struck prospective jurors Dowdy and Webb Hill without objection by the defense. When the State struck prospective jurors Meiley and Williams Peck, the defense objected and raised a *Batson* challenge because they were African-American. The State responded by raising a *Batson* challenge to all of the defense's peremptory strikes as all of them were for White jurors.  The trial court ultimately found that both sides raised a *prima facie* *Batson* challenge and asked for race-neutral reasons for the strikes.  We begin by noting that neither the State or defense made a reference to race as a reason for striking the prospective jurors.

¶ 9     With respect to Meiley, the State indicated that he was vague as to his work history and was a shooting victim in a case where no arrest was made. The State expressed concern about his fairness to police because no arrest was made in his case. Upon objection, the trial court indicated that while it disagreed about the vagueness of Meiley's work history, it found that concern about fairness to police was race-neutral. The defense made no further objection.

¶ 10    With respect to Williams Peck, the State noted that her family member had a drug case, she visited prisoners in the county jail who had drug cases, and defendant was charged with a drug case.  The trial court found the State's reasons to be race-neutral. The defense made no further objection.

¶ 11    With respect to Pallazzolo, the defense indicated that his brothers were police officers, and they did not like how he looked at defendant.  The trial court found that the juror's family being

officers was a race-neutral reason, but disagreed that the juror looked at defendant in any meaningful way. The State made no further objection.

¶ 12    With respect to Lufrano, the defense indicated that her family and friends were police officers. The trial court found the reason to be race-neutral, although it did not agree with the reasoning. The State made no further objection.

¶ 13    With respect to Agase, the defense stated that he knew police officers, had an interest in crime shows, and that they did not like how he looked at defendant. The trial court found that the strike was race-neutral because the juror knew police officers. The State made no further objection.

¶ 14    The court then asked the State to give race-neutral reasons for striking Dowdy and Webb Hill, even though the record does not indicate that the defense raised a *Batson* challenge to those strikes. With respect to Dowdy, the State expressed concern that she was a psychology major and watched *The First 48* "a lot." They reasoned that *The First 48* was an inappropriate way to view how police actually worked. The trial court disagreed with their reasoning, but nevertheless found the reason to be race-neutral. The defense made no further objection.

¶ 15    With respect to Webb Hill, the State noted that her ex-husband had been arrested for and convicted of several drug charges and that she might be biased against defendant. The trial court accepted the reason as race-neutral. The defense made no further objection.

¶ 16    From the final panel, the State struck prospective juror Clesen (26), an African-American female, and the defense raised a *Batson* challenge. The defense struck prospective juror Labriola (16), a White female, and the State raised a *Batson* challenge.

¶ 17    The State noted Clesen's statements that she was a theology student, visited the county jail for ministry work in the prior 15 months, and that she watched the television program *Criminal*

*Minds*. The State believed she would be sympathetic to defendant instead of basing a decision on the facts of the case. The trial court indicated that it understood the "theology business" and that she would be inclined to be more sympathetic. The court subsequently found the reason to be race-neutral. The defense made no further objection.

¶ 18    The defense stated that Labriola had friends who were police officers and that her daughter had been previously charged with an offense. The defense believed she was possibly judgmental. The court found the reason to be race-neutral. The State made no further objection.

¶ 19     The trial court noted that while it did not agree with either party's reasoning for striking the jurors, particularly those that knew police officers, it nevertheless found that neither side violated *Batson*. At this point, the court concluded that, since each side had used five strikes, they each had two left.

¶ 20    From the second group, the State and defense each struck one prospective juror. The State struck prospective juror Delgado (27), a Hispanic male, who was a security officer and was preparing to be a Chicago police officer. The defense struck prospective juror Pechona (30), a White male, whose daughter had a drug problem and had been arrested several times on drug charges.

¶ 21    The final jury makeup was as follows: Magallanes, a White female; Gonzalez, a Hispanic female; Malik, an Indian male; Servidio, a White male; Ramirez Diaz, a Hispanic female; Ferro, a White female; Janetopoulos, a White male; R. White, a White male; Bobowski, a White male; Putziger, a Black female; Kaffel, a White female; and Fenway, a White female. The two alternate jurors were H. White, a Black male; and McBride, a White male.

¶ 22    The case proceeded to trial on May 31, 2017, and the jury subsequently returned a verdict of guilty.  On June 22, 2017, defendant filed a motion for judgment notwithstanding the verdict or alternatively, a new trial. In the motion, defendant alleged evidentiary errors, reasonable doubt, errors in giving the State's proffered jury instructions, and error in allowing the State to excuse Clesen over the defense's objection.  The trial court denied defendant's motion, and the matter proceeded to sentencing.

¶ 23    During sentencing, the court noted that defendant was eligible for Class X sentencing (6 to 30 years) based on his background.  As such, the court sentenced him to eight years based on the mitigating evidence and because it believed defendant had rehabilitative potential. Defendant's motion to reconsider the sentence was denied and this appeal followed.

¶ 24                                    ANALYSIS

¶ 25    On appeal, defendant contends that he is entitled to a new trial because the State violated *Batson v. Kentucky*, 476 U.S. 79 (1986), by using all of its peremptory strikes on five African-American venirepersons and provided pretextual reasons for three of them. In support of his contention, defendant asserts that the trial court committed clear error when it ruled that the State provided adequate race-neutral reasons for striking three African-American jurors, specifically Dowd, Meiley and Clesen. The defendant further maintains that the State did not accept a single African-American to serve on the jury. Defendant argues that the reasons provided by the State lacked credibility and were pretextual. He further alleges that the fact that the State accepted other jurors with the same characteristics raises an inference of purposeful discrimination. Defendant concludes that the State "purposely excused African-Americans so that not a single African-American juror would decide his case."

¶ 26    Next, defendant contends that his claims were preserved in his posttrial motion. However, as noted above, defendant only challenged the State's strike of Clesen in his posttrial motion. While failure to raise specific claims in posttrial motions, would ordinarily result in forfeiture of those claims on appeal, a *Batson* challenge preserves peremptory strikes that were timely objected to during *voir dire* for review. *People v. Primm*, 319 Ill. App. 3d 411, 419 (2000).  As noted herein above, defendant did in fact object to Meiley during *voir dire*. Thus, defendant's claims with respect to Meiley and Clesen were preserved for purposes of this appeal.

¶ 27    We do note, however, that defendant has forfeited any claims regarding to the State's peremptory challenge of Dowdy because no objection was raised during *voir dire*.  See *People v. King*, 192 Ill. 2d 189, 196 (2000). Moreover, defendant raises no specific arguments on appeal with respect to Webb Hill and Williams Peck in his brief.  Accordingly, any arguments related to the State's strike of those prospective jurors are also waived for review.  See Supreme Court Rule 341(h)(7) (eff. May 25, 2018).  See also *People v. Hobson*, 117 Ill. App. 3d 191, 200 (1983) (defendant waived issues for which no argument was made in appellate brief even though he made general allegations as to such issues). As a result, we will confine our discussion to defendant's claims related to the State's strike of Meiley and Clesen.

¶ 28    The purpose of *voir dire* is to ascertain sufficient information about prospective jurors' beliefs in order to allow removal of those venirepersons whose minds are so closed by bias and prejudice that they cannot apply the law as instructed in accordance with their oath. *People v. Hope*, 168 Ill. 2d 1, 30 (1995).

¶ 29    The equal protection clause of the fourteenth amendment prohibits the State from using its peremptory challenges to exclude otherwise qualified venire persons based solely on their race.

U.S. Const., amend. XIV; *Batson*, 476 U.S. at 89. In *Batson*, the United States Supreme Court set forth a three-step process for evaluating whether the State used a peremptory challenge in a racially discriminatory manner. *People v. Payne*, 2015 IL App (2d) 120856, ¶ 42 (citing *People v. Easley*, 192 Ill. 2d 307, 323 (2000)). To establish a *prima facie* case, the defendant must demonstrate that "relevant circumstances" raise an inference of purposeful discrimination based on race. *Batson*, 476 U.S. at 96. The threshold for making out a *prima facie* case under *Batson* is not high, "a defendant satisfies the requirements of *Batson's* first step by producing evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred." *Johnson v. California*, 545 U.S. 162, 170 2005); *People v. Davis*, 231 Ill. 2d 349, 360 (2008).

¶ 30    Second, if the moving party makes a *prima facie* showing, the burden then shifts to the nonmoving party to articulate a race-neutral explanation for excusing the venireperson. *People v. Hogan*, 389 Ill. App. 3d 91, 100 (2009). A race-neutral basis means "an explanation based on something other than the race of the juror." *Hernandez v. New York*, 500 U.S. 352, 360 (1991). Once the non-moving party articulates race-neutral reasons for excusing the venireperson in question, the trial court must then move to the third step. *Id.*

¶ 31    At the third step, the trial court must evaluate both, the reasons the nonmoving party struck the potential juror, as well as the moving party's claim that the proffered reasons are pretextual to determine whether the moving party has carried his burden of establishing purposeful discrimination. *Id.* The trial court's finding of whether purposeful discrimination has been proved is a finding of fact and will not be overturned on review unless it is clearly erroneous. *Id.*

¶ 32    The Constitution forbids striking even a single prospective juror for a discriminatory purpose. *Davis*, 231 Ill. 2d at 360. However, the mere fact of a peremptory challenge to a black

venireperson who is the same race as defendant or the mere number of black venirepersons who are peremptorily challenged, without more, will not establish a *prima facie* case of discrimination. *Id.* at 360-61.

¶ 33   Turning to the case at bar, the record establishes that both the State and the defense had a total of seven peremptory challenges each. Both sides used five peremptory challenges prior to selecting the 12th juror, and both raised *Batson* challenges: the defense because the State struck three African-American venirepersons, and the State because the defense struck five White venirepersons. The trial court found that both sides established *prima facie* cases under *Batson*, and asked both sides to offer race-neutral reasons for striking the prospective jurors.

¶ 34   Once the trial court determines that the State had an adequate race-neutral reason for exercising the peremptory challenges, our determination is whether the trial court erred in finding that the State's explanation for striking the prospective juror was race-neutral and valid. See *Payne*, 2015 IL App (2d) 120856, ¶ 47.

¶ 35   According to the record, the State indicated that it struck Meiley because he was vague about his work history and was a shooting victim in a case where no arrest was made. The State expressed concern about his fairness to police because no arrest was made in his case. The trial court reasoned that Meiley's background as a shooting victim in an unresolved case was a race-neutral reason for excluding him as a prospective juror.

¶ 36   Defendant, however, asserts that the State's explanation was pretextual because it accepted non-African-American jurors who were similarly situated, namely Fenway and McBride. Both Fenway and McBride were victims of crimes where the offenders were never arrested. A review of the record establishes that defendant never made this argument before the trial court,

and raises it for the first time on appeal. Thus, it is waived. *People v. Robinson*, 89 Ill. App. 3d 211, 213 (1980).

¶ 37    With respect to Clesen, the State indicated that it struck her as a prospective juror because she was a theology student who recently visited the county jail for ministry work. The State believed she would be sympathetic to defendant instead of basing her decision on the facts of the case. The trial court found this to be a race-neutral reason for the strike. Defendant claims that the State's reason was pretextual because other venirepersons with degrees were accepted and H. White, who was a pastor, was accepted as an alternate juror. The record establishes that defendant never made this argument before the trial court, and raises it for the first time on appeal. Thus, it is waived. *Robinson*, 89 Ill. App. 3d at 213.

¶ 38    Waiver aside, we reject defendant's arguments that the State's proffered reasons for the strikes to Meiley and Clesen were not race-neutral. A race-neutral reason for peremptory strikes does not need to be persuasive, plausible or make sense, but rather is a reason that does not deny equal protection. *Easley*, 192 Ill. 2d at 324. Absent an inherently discriminatory intent in the State's explanation, the reason offered will be deemed to be race-neutral. *Id.*

¶ 39    A determination is clearly erroneous when a review of the entire record leaves the reviewing court with the "definite and firm conviction that a mistake has been made." *People Bradshaw*, 2020 IL App (3d) 180027, ¶ 37, (quoting *People v. Payne*, 2015 IL App (2d0 120856, ¶ 43).

¶ 40    Here, the record indicates that the State never indicated that it was striking any prospective juror based on race. Additionally, we find that the State's offered reason for striking Meiley did not establish an inherently discriminatory intent; he was the victim of a violent crime that caused

bodily injury whereas the other potential jurors experienced property damage. The level of potential bias or prejudice against the police may differ depending on the severity of the crime. We find that such reason is race-neutral.

¶ 41    Similarly, despite defendant's assertion, the State never indicated that it struck Clesen because of her education.  To the contrary, the record indicated that she was a theology student who visited inmates at Cook County jail for ministry work during the prior 15 months.  She also stated that she watched *Criminal Minds.*  The alternate juror, H. White, who was also black and a pastor, stated that he previously visited Cook County jail approximately 20 times over the years for pastoral counseling, the last time being approximately two years ago, and that he watched *Grey's Anatomy*. The record also indicated other differences in their backgrounds related to employment history and prior jury service. Defendant has not cited, nor have we found, a case that stands for the proposition that the striking of a venireperson who is the same race and shares similar characteristics as an accepted venireperson will be susceptible to a *Batson* challenge.  In this case, the State's belief that Clesen would be inclined to be sympathetic towards defendant and not base her decision on the evidence is sufficiently race-neutral.

¶ 42    We need not address defendant's alternative contention that counsel was ineffective for failing to preserve this issue for appellate review as we have determined herein that it was in fact preserved for review.

¶ 43    Accordingly, the trial court's decision that the State's peremptory challenges were not based on race was not clearly erroneous.

¶ 44                                              CONCLUSION

¶ 45    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 46    Affirmed.

¶ 47    MIKVA, J., specially concurring:

¶ 48        I join in all aspects of this well-crafted opinion, other than the majority's findings, *supra* ¶¶ 27, 36 and 37, that certain of Mr. Dent's arguments were not preserved for appeal.

¶ 49    First, as to juror Dowdy (*supra* ¶ 27), I disagree with the majority's conclusion that Mr. Dent had to raise a *Batson* challenge after the trial court had spontaneously asked the State for its race-neutral reasons for striking her. As our supreme court has recognized, "a trial court has the authority to raise a *Batson* issue *sua sponte* in appropriate circumstances." *People v. Rivera*, 221 Ill. 2d 481, 504 (2006). By asking the State for its race-neutral reason for striking Ms. Dowdy, the court had begun the first step of the three-step *Batson* inquiry, and I agree with Mr. Dent that it would have made little sense at that point for defense counsel to also raise an objection. I note however, that defense counsel would be well-advised for the future to specifically note their objections in these circumstances.

¶ 50    I would reach the merits of the *Batson* claim as to Ms. Dowdy, and find, for the same reasons that the majority opinion has rejected the other *Batson* challenges, that this challenge should be rejected on appeal. As the court points out, *supra* ¶ 38, "[a] race-neutral reason for peremptory strikes does not need to be persuasive, plausible or make sense, but rather is a reason that does not deny equal protection. [Citation.] Absent an inherently discriminatory intent in the State's explanation, the reason offered will be deemed to be race-neutral. [Citation.]" In this case, the State's explanation for striking Ms. Dowdy was their concern that she was a psychology major and watched the television show "The First 48" "a lot." They reasoned that "The First 48" was an inappropriate way to view how police actually worked. I would not disagree with the trial court's

finding that the State's asserted concern that "The First 48" might give Ms. Dowdy a negative view of the police was a "race-neutral" reason for striking her.

¶ 51    As to prospective jurors Meiley and Clesen, the majority accepts (*supra* ¶¶ 36, 37) the State's contention that Mr. Dent was required to object both to the preemptory challenge itself and then, again, as to the State's proffered race-neutral reason for the challenge. According to the majority, Mr. Dent's failure to do so resulted a forfeiture of his right to argue on appeal that the proffered race-neutral reason was pretextual.

¶ 52    The State cites no case that holds that this second objection is required. To the contrary, Mr. Dent's *Batson* challenge is a claim that the State intentionally used its preemptory challenges in a racially discriminatory matter. 476 U.S. at 93. That claim is made at the point that a party raises a *Batson* objection to a preemptory challenge and remains through all three steps of the *Batson* procedure. As our supreme court has made clear, "[w]e require parties to preserve issues or claims for appeal; we do not require them to limit their arguments [on appeal] to the same arguments that were made below." *Brunton v. Kruger*, 2015 IL 117663, ¶ 76. Mr. Dent made claims below that these two preemptory challenges were racially discriminatory. Mr. Dent can now make any argument he can muster in support of those claims. I would not find any forfeiture of his arguments that the reasons the State gave for striking these two jurors were a pretext for racial discrimination. However, I do agree with the majority that these arguments are, ultimately, not persuasive.